Helene V. HOFFMAN, Petitioner

v.

STATE EMPLOYEES' RETIREMENT
BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 5, 2006.
Decided Oct. 16, 2006.
Publication Ordered Jan. 26, 2007.

Helene V. Hoffman, petitioner, pro se.

M. Catherine Nolan, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Helene V. Hoffman (Beneficiary), pro se, petitions for review of a decision of the State Employees' Retirement Board (Board) that, under the State Employees' Retirement Code (Code),[1] she was not entitled to have the full amount of the cost of living allowances (COLAs)[2] she was receiving prior to age 65 added to her base annuity upon her reaching age 65. In doing so, the Board affirmed the decision of a Hearing Examiner (Examiner).

Beneficiary became a member of the Commonwealth of Pennsylvania State Employees Retirement System (SERS) on January 21, 1958, when she was first hired for a position with the Commonwealth. She retired from Commonwealth employment on June 27, 1992.

Under Section 5705 of the Code, an eligible beneficiary upon retirement could choose "to receive either a maximum single life annuity ... or a reduced annuity certified by the actuary to be actuarially equivalent to the maximum single life annuity and in accordance with one of" four options. 71 Pa.C.S. § 5705. At the time of her retirement, two of those options, identified as Option 1 and Option 4, provided that a beneficiary could choose to receive:

(1) **Option 1.**—A life annuity to the member with a guaranteed total payment equal to the present value of the maximum single life annuity on the effective date of retirement with the provision that, if, at his death, he has received less than such present value, the unpaid balance shall be payable to his beneficiary.

. . .

(4) **Option 4.**—Some other benefit which shall be certified by the actuary to be actuarially equivalent to the maximum single life annuity, subject to the following restrictions:

(i) **any annuity shall be payable without reduction during the lifetime of the member** *except as the result of the member's election to receive an annuity reduced upon attainment of age 65, in anticipation of the receipt of a social security benefit;*

71 Pa.C.S. § 5705(a)(1), (4) (emphasis added). The italicized language of Option 4, which read, "except as the result of the member's election to receive an annuity reduced upon attainment of age 65, in anticipation of the receipt of a social secu-

---

1. 71 Pa.C.S. §§ 5101–5956.

2. Although the Code refers to these items as supplemental annuities, throughout the proceedings these items are also referred to as COLAs, so, for consistency, the term COLA will be used herein.

rity benefit," was deleted by the Act of April 29, 1994, P.L. 159, No. 29, Section 10, which became effective on January 1, 1995. This language, however, was in effect at the time Beneficiary selected her retirement package. Option 4 was designed to coordinate with the receipt of social security benefits. It provides for a higher, or accelerated, retirement benefit from SERS prior to the beneficiary reaching age 65, and then a reduced benefit after age 65 when the beneficiary would also receive social security benefits.

In the days leading up to her retirement, Beneficiary met with a SERS retirement counselor, Margaret J. Hoover, who counseled her as to the available options. As discussed later, a factual dispute arose as to whether Ms. Hoover also discussed COLAs with Beneficiary. Beneficiary se-

lected Option 4,[3] under which she: (1) elected to withdraw all of her accumulated deductions; (2) would receive an accelerated monthly annuity benefit until she attained age 65; and (3) would receive a reduced monthly annuity benefit at age 65, when she began receiving social security benefits. At the time of her retirement, her accelerated annuity benefit was $1734.00 per month; when she reached age 65, her annuity benefit was reduced to $831.00, which, in addition to her social security benefit of $950.00, would provide her with approximately the same total monthly amount.

In the period between her retirement date and the date she reached age 65, the General Assembly approved three COLAs in the years 1994,[4] 1998,[5] and 2003,[6] which

---

3. Throughout the record, the term Option 4 is used interchangeably with Special Option 1, as well as accelerated Option 1. In its brief before this Court, SERS notes that the terms were used synonymously because:

> [a]n accelerated Option 1 was, in fact, an Option 4 actuarial equivalent of the MSLA [Monthly Single Life Annuity]. Its name is derived from the fact that, like an Option 1 benefit, it provides a single life annuity for the life of the member and, if any portion of the initial Present Value remains at the time of the member's death, a death benefit to the member's beneficiary. However, unlike a standard Option 1, which provides equal monthly annuity payments from the date of retirement until the member's death, the accelerated Option 1 provides an enhanced payment from the date of retirement until age 65 at which time the annuity payment is automatically reduced by operation of law.

(SERS Br. at 11 n. 10.) Option 4 is also sometimes referred to as "accelerated social security retirement." *Cosgrove v. State Employes' Retirement Board*, 665 A.2d 870, 871 (Pa.Cmwlth.1995). For consistency, we refer to this higher payment as an "accelerated monthly annuity benefit."

4. *See* Section 5708.3 of the Code, 71 Pa.C.S. § 5708.3. Subsection (b) of this section provides that:

b) **Amount of additional supplemental annuity.**—The amount of the additional monthly supplemental annuity shall be determined on the basis of the most recent effective date of retirement and payable on the first $3,000 of annuity received per month, as follows:

| Most recent effective date of retirement | Percentage factor |
|---|---|
| July 1, 1991, through June 30, 1992 | 1.5% |
| July 1, 1990, through June 30, 1991 | 2.8% |
| July 1, 1989, through June 30, 1990 | 5.3% |
| On or prior to June 30, 1989 | 7.9% |

71 Pa.C.S. § 5708.3(b).

5. *See* Section 5708.5 of the Code, 71 Pa.C.S. § 5708.5. Subsection (b) of this section provided that: "**(b) Amount of supplemental annuity.**—The amount of the supplemental annuity payable pursuant to this section shall be a percentage of the amount of the *monthly annuity payment on July 1, 1998.*" 71 Pa.C.S. § 5708.5(b) (italic emphasis added).

6. *See* Section 5708.7 of the Code, 71 Pa.C.S. § 5708.7. Subsection (b) of this Section provides: "**(b) Amount of supplemental annuity.**—The amount of the supplemental annuity payable pursuant to this section shall be a percentage of *the amount of the monthly annuity payment on July 1, 2003.*" 71 Pa. C.S. § 5708.7 (italic emphasis added).

were applied to her accelerated annuity benefits and resulted in her receiving additional monthly payments of $26.01, $176.00, and $174.24, respectively, for each year. These COLAs totaled $376.25 and, when added to her accelerated monthly annuity benefit of $1734.00, resulted in her receiving $2110.25 per month immediately prior to her reaching age 65.·

Beneficiary argues that she believed when she reached age 65, and her accelerated annuity was reduced to $831.00, the $376.25 COLA amount would be added to the annuity, thereby giving her a total annuity plus COLA amount of $1207.25 monthly, which she would receive in addition to the social security benefit of $950.00. She asked SERS to confirm her calculation. SERS concluded that Beneficiary had miscalculated her award because the COLAs of 1998 and 2003 would be recalculated based on the reduced amount of her annuity. Accordingly, "[u]pon [Beneficiary] attaining age 65, SERS reduced Claimant's monthly annuity payment to $1,011.32." (Examiner Op. Finding of Fact (FOF) 18.)

Beneficiary appealed from this decision, seeking an additional payment of $195.93 per month, which she argued is the difference between the COLA amount she received on her accelerated annuity, and the COLA amount based on the reduced annuity.

On December 13, 2004, Hearing Examiner Edward S. Finkelstein conducted a hearing on Beneficiary's appeal. He received documentary evidence from each side and heard testimony from six witnesses, three for each of the two sides, SERS and Beneficiary.

Testifying for SERS was Gayle W. Martin, Administrative Assistant in the Bureau of Benefit Administration, who essentially testified as to the procedural posture of the case.

Also testifying for SERS was Martha J. Hoover, Regional Office Manager for SERS. Within her testimony was a description of the Option 1 Benefit:

> It was a very popular choice in the early '90's. It meant that you got a higher retirement check from SERS until Age 65 at which it was assumed you withdraw the full Social Security benefit and your SERS check would be reduced, but when you added the Social Security benefit to the SERS benefit it was supposed to come up to the same total amount of income.

(Notes of Testimony (N.T.) before Examiner at 53–54.) She also testified that she "provided the basic options to everyone who was interested in retiring" and did not encourage retirees to select any particular option. She also testified that, when the topic of COLAs is brought up at a retirement counseling session, the counselors "can't get into it any further" other than to say that the Code does not provide for automatic COLAs, and that COLAs are "dependent on the legislature." (N.T. at 55.) She noted this was the counseling practice of SERS in 1992.

The final witness testifying for SERS was Linda M. Miller, Director of the SERS' Benefits Determination Division. Director Miller testified as to the types of benefits available. She also provided a description of the Special Option 4 Benefit, describing it in the following manner:

> [W]hat that Special Option 4 does is gives the member the option to design their own retirement account, as long as that benefit is actuarially sound and administratively sound, and it also provided them the opportunity to withdraw any or all of their contributions and still receive a benefit on the balance of the money that's there, which would be the State's portion.

(N.T. at 63–64.) Director Miller also testified about how the COLA benefit is calculated, particularly in relation to one receiving an accelerated benefit, such as Beneficiary had been receiving:

> [B]ecause the member is receiving an accelerated benefit, they're actually receiving more than they were entitled to.
>
> I don't want to say entitled to. Their benefit is accelerated based on the Social Security amount. So when they receive a COLA, that COLA, depending on how the COLA is written—sometimes it's percentages, sometimes it's not percentages. Sometimes it's a combination of percentages and "X" amount of dollars for years of service, or "X" amount of dollars for the amount of years you've been on retirement.
>
> So, again, it's dependent upon how the COLA is structured. The COLA is applied to the amount of the monthly benefit that the member is receiving at that point.
>
> Once the benefit is reduced at Age 65, the COLA's are still applied, but they are applied to the reduced monthly benefit, or what the benefit the member is entitled to at the Age 65 reduction.

(N.T. at 65.) When asked what the effect would be of calculating the COLA based on the accelerated benefit amount after the member reaches age 65, Director Miller testified that the beneficiary "would be receiving more actuarially than they are entitled to," which she clarified to mean more than the "[t]he maximum single life annuity. . . ." (N.T. at 66.)

In support of her appeal, Beneficiary presented her own testimony, as well as the testimony of fellow state employee retirees, William Shoemaker and Helen M. Winhofer, all three of whom had received retirement counseling from Ms. Hoover.

Beneficiary testified that Ms. Hoover had told her that she would receive CO-LAs. She also testified that Ms. Hoover did not tell her that her COLAs would be reduced at the time her annuity was reduced. Beneficiary testified that, had she been aware of this COLA reduction, she would not have selected Option 4. Beneficiary also testified that she selected Option 4, "at least in part, because she was experiencing health problems, including lung surgery, and [she] believed it would be beneficial to have additional money early in her retirement." (FOF 5.)

Both Mr. Shoemaker and Ms. Winhofer testified that, in their respective individual retirement counseling sessions with Ms. Hoover, she did not talk with either about COLAs.

Following the hearing and his review of arguments in post-hearing briefs, Examiner issued a decision denying Beneficiary's appeal. The decision included detailed findings of fact and conclusions of law. Examiner noted that he "finds that Ms. Hoover never assured the Claimant that COLAs would be granted." (Examiner Op. at 10.) In supporting this conclusion, he reasoned that:

> The Hearing Examiner, as the trier of facts and with the opportunity to observe the candor and testimony of the Claimant, Ms. Hoover and Mr. Shoemaker, believes that the testimony of Ms. Hoover is more credible, and supported by Mr. Shoemaker, than the testimony of the Claimant regarding a discussion of the COLAs when she retired in 1992. The Claimant was equivocal in her testimony as to Ms. Hoover's counseling regarding the COLAs.

(Examiner Op. at 9.) Examiner noted that his credibility determinations effectively eliminated Beneficiary's appeal.

Nonetheless, Examiner addressed Beneficiary's estoppel argument, concluding that she failed to meet her burden of es-

tablishing each of the three elements for application of judicial estoppel against the Commonwealth: (1) intentional or negligent misrepresentation of material facts; (2) with knowledge that the other side would rely on the misrepresentation; and (3) which thereby induced the party to act to her detriment. *Borkey v. Township of Centre,* 847 A.2d 807, 811 (Pa.Cmwlth. 2004).

Accordingly, Examiner denied Beneficiary's requested relief.

Beneficiary raised several exceptions in an appeal to the Board. The Board denied the appeal. The Board noted that "Claimant's exceptions [were] presented in a series of unnumbered paragraphs," several of which questioned the Examiner's credibility determinations, specifically, that "Claimant expresses her disappointment with the recommendation of the Hearing Examiner and her disagreement with his determination about the credibility of various witnesses and the weight he afforded certain evidence." (Board Op. at 1.) The Board noted that it is Examiner's function to determine and weigh witness credibility, which he did, and that Examiner's findings were supported by substantial evidence. In particular, the Board noted that it agreed with Examiner's finding that Ms. Hoover had not counseled Beneficiary on COLAs.

The Board also addressed several legal arguments that Beneficiary raised. First, the Board noted that Beneficiary made several references wanting to see SERS's old procedure on COLAs. The Board noted that it was not entirely clear as to what Beneficiary was referring, although it surmised it was the 1994 Amendment in Section 5705(a)(4)(i). The Board noted that the amended provision of Section 5705(a)(4)(i) (which provided that "any annuity shall be payable without reduction during the lifetime of the member"), did not become effective until January 1, 1995, such that Beneficiary was bound by the provisions in effect at the time she retired in 1992. In contrast to the amended provision, the provision effective at the time Beneficiary selected her retirement option, allowed a reduction in the annuity "as the result of the member's election to receive an annuity reduced upon attainment of age 65." (Board Op. at 2.)

The Board also rejected Beneficiary's exception to "Examiner's finding that if her prior COLAs were not reduced at the time she attained age 65, then the total payments to her would be actuarially incorrect." (Board Op. at 3.) The Board noted that "Claimant makes several averments of fact in support of her position [but] none of these are supported by substantial evidence in the record." (Board Op. at 3.)

Similarly, the Board rejected Beneficiary's exception to Examiner's conclusion that Beneficiary failed to establish the elements of estoppel. The Board noted that "Claimant does not ... point to anything in the record that would support her conclusion [and] Claimant offers no law and no legal analysis to support her conclusion." (Board Op. at 3.)

For these reasons, the Board ruled in favor of SERS, directing that:

It is **HEREBY ORDERED** that Claimant's request to have the full amount of the COLAs she was receiving prior to age 65 added to her base annuity upon reaching age 65 is **DENIED** ....

(Board's Order dated 9–27–05.)

In her pro se Petition for Review with this Court, Beneficiary essentially raises the same arguments she raised before the

Board,[7] which we understand are that the Board's decision was not based on substantial evidence, and the Board's decision is premised on errors of law.[8] We agree with the Board's resolution of these issues.

■ Beneficiary bears the burden of establishing the facts she asserted. *Wingert v. State Employes' Retirement Board,* 138 Pa.Cmwlth. 43, 589 A.2d 269, 271 (1991). "Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the [Board] and are subject to only limited review by this court." *Beardsley v. State Employes' Retirement Board,* 691 A.2d 1016, 1018 (Pa.Cmwlth. 1997). In this case, the Board appropriately and correctly exercised its fact-finding function, independently reviewing the record and supporting its factual findings with substantial evidence.

■ "Evidence . . . of the routine practice of an organization, whether corroborated or not . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the . . . routine practice." Pa. R.E. 406. As noted by the Board, Ms. Hoover testified that it was SERS retirement counseling practice in 1992 not to discuss COLAs. Beneficiary argues that the Board erred in finding support for this premise in her witnesses' testimony. From our review of the record, we agree with the Board that the testimony of these witnesses does support the Board's conclusion that COLAs were not discussed. While Ms. Hoover's credible testimony alone was sufficient to establish that the issue of COLAs was not discussed at Beneficiary's retirement counseling sessions, her testimony, coupled with that of Beneficiary's own witnesses, certainly provides substantial evidence in support of the Board's factual findings.

■ In reviewing the Board's examination of Beneficiary's legal arguments, we note that, as an agency charged with the execution and application of the retirement statute, "the Board is entitled to considerable deference in its construction of the Retirement Code and the regulations promulgated thereunder; therefore, the Board's construction may not be overturned unless it is clearly erroneous." *Gowden v. State Employees' Retirement Board,* 875 A.2d 1239, 1241 n. 4 (Pa. Cmwlth.2005) (*quoting McCormack v. State Employees' Retirement Board,* 844 A.2d 619, 622 n. 2 (Pa.Cmwlth.2004)). We find no error in the Board's resolution of the legal issues raised by Beneficiary.

■ As correctly noted by Examiner and the Board, Beneficiary has failed to establish the elements of estoppel. Notably, the Board's finding that Ms. Hoover did not discuss COLAs with Beneficiary effectively precludes a finding that the first element of estoppel was met: that the representative made an intentional or negligent misrepresentation. Additionally, Beneficiary offers no legal support estab-

---

7. "Our standard of review is limited to determining whether an error of law was committed, whether there is substantial evidence to support necessary findings of fact, or whether constitutional rights have been violated." *Lowing v. Public School Employes' Retirement Board,* 776 A.2d 306, 307 n. 1 (Pa.Cmwlth. 2001).

8. Beneficiary's Petition for Review identifies the issues in this manner:

The agency committed an error of law in concluding that Petitioner was not entitled to the full amount of COLA[]s she was receiving prior to age 65 to be added to her base annuity upon reaching 65 versus only a percentage. The findings of fact in support of such a conclusion were not supported by substantial evidence.
(Petition for Review.)

lishing that estoppel could be applied in this situation.[9] For these reasons, we find no error in the Board's resolution of the estoppel issue.[10]

Beneficiary also argues that, in her 1992 Agreement, she agreed to have her pension annuity reduced, but did not agree to have her COLAs reduced (Beneficiary Br. at 9.) She, thus, seems to be arguing that this Agreement includes, within it, an agreement as to how COLAs would be handled.

■ However, her retirement agreement did not address the issue of COLAs. As noted by the testimony of the SERS officials, and as correctly discussed by the Board, the award of COLAs is not guaranteed, but falls within the discretion of the General Assembly, and the terms are re-

flected in any subsequent COLA legislation. Thus, while Beneficiary was statutorily authorized to choose how she would receive her retirement benefits, 71 Pa.C.S. § 5705, there was no provision regarding any COLAs that she may, or may not, have eventually received.

Beneficiary also argues that the terms and conditions of the COLAs required that they be determined under the options in effect at the time the COLA became effective. Beneficiary argues that, with the change in language to Option 4 in 1994, the option read, "any annuity shall be payable *without reduction during the lifetime of the member.*" 71 Pa.C.S. § 5705(a)(4)(i). Beneficiary argues that this principle applies to the COLAs too, such that they could not be reduced during her lifetime.[11]

---

9. To the contrary, our precedent suggests that estoppel is not applicable in a case such as this one. Except under limited circumstances, not applicable in this case (change of beneficiary by death or divorce), a retirement plan may not be changed once elected. 71 Pa.C.S. § 5907(j); 4 Pa.Code § 249.7. Relying on these provisions, among others, we have concluded that the Code narrowly restricts retirement counseling to the "rights and duties" of the SERS member and that, once it appears a member's rights and duties were fully explained, the counselor's obligation under the Code is discharged. "[T]he role of the retirement counselor is merely to explain the options available to the member and to answer questions about the choices the member must make. That role does not include making a detailed inquiry into the mental state, the physical and financial condition of the retiring member or to second-guess the member's choice." *Welsh v. State Employees' Retirement Board,* 808 A.2d 261, 264 (Pa. Cmwlth.2002). In *Marron by Marron v. State. Employees' Retirement Board,* 118 Pa.Cmwlth. 174, 544 A.2d 1095, 1098 (1988), we noted that "even if the pensioners were misled by inadequate counseling," the "unequivocal statutory language prevents a change in benefit plans" and prevents our application of estoppel, because to hold otherwise, we would be required to alter the statute, which

"is a function for the legislature." *Cosgrove,* 665 A.2d at 874.

10. Beneficiary takes issue with the Board's finding that she failed to suffer a detriment. The third element of estoppel requires the party seeking to use the doctrine to establish that she suffered a detriment *based on her reliance on the negligent representation.* Assuming, for argument's sake, that she did suffer a legal detriment, she failed to establish that SERS made a misrepresentation to her; therefore, whether she suffered a detriment is, thus, irrelevant because of her failure to establish all the elements necessary for the doctrine to be applied.

11. Beneficiary also argues that the Examiner erred in relying on the premise that she would exceed her Monthly Single Life Annuity (MSLA) if she received full COLAs. Beneficiary then argues that "[e]xceeding the MSLA has no bearing on [her] receiving full COLAs." (Beneficiary Br. at 12.) Beneficiary argues that:

The MSLA is figured at the time of retirement. At [sic] refers to the basic monthly retirement benefit taking into consideration the deductions paid in by the employee and the State's contribution and divided by the Maximum Annual Retirement Allowance. Most retirees take out the amount they paid in

All three of the COLA statutes contain a "conditions" provision which state:

**(d) Conditions.**—The additional supplemental annuity provided under this section shall be payable under the same terms and conditions as provided under the option plan in effect as of [June 30, 1994, July 1, 1998, and July 1, 2002 respectively for each COLA].

See 71 Pa.C.S. §§ 5708.3(d), 5708.5(d), 5708.7(d). SERS argues that this section requires the COLA will be payable "under the same terms and conditions" as the option plan under which Beneficiary is receiving her benefits, which specifically provided for a reduction in benefits when she reached age 65:

Each of the three supplements she has received was calculated as a percentage of her monthly annuity and was payable "under the same terms and conditions as provided under the option plan in effect" on the supplement's effective date. 71 Pa.C.S. §§ 5708.3(d), 5708.5(d), 5708.7(d). Because Ms. Hoffman's base annuity payment was at all times subject to adjustment at age 65, her supplemental benefits, which were originally calculated based on the enhanced annuity payment, were subject to adjustment too. To conclude otherwise would be to award Ms. Hoffman supplemental annui-

ties larger than those created by the Legislature.

(SERS Br. at 8.)

█ Under Pennsylvania law, the retirement system is considered a contract between the employee and the state, albeit one whose terms are controlled by the Code. "The State Employees Retirement System is a creation of legislature." *Bittenbender v. State Employees' Retirement Board*, 154 Pa.Cmwlth. 11, 622 A.2d 403, 405 (1992). "It provides for various contributions to a fund and various choices (options) that a prospective pensioner has upon retirement. 71 Pa.C.S. § 5705." *Id.* Our Supreme Court has referred to the "[t]he State Employes' Retirement System [as] a contract between the Commonwealth and all its officers and employees, members of the Retirement System." *Dom v. State Employes' Retirement Board*, 345 Pa. 489, 493, 28 A.2d 796, 798 (1942).[12] This Court has noted that "even though the contract which the employee has with the Commonwealth must be liberally construed," *Cosgrove v. State Employees' Retirement Board*, 665 A.2d 870, 871 (Pa. Cmwlth.1995), "a liberal administration of the retirement system does not permit the board to circumvent the express language of the Code . . . ." *Dowler v. Public School Employees' Retirement Board*, 153 Pa. Cmwlth. 109, 620 A.2d 639, 644 (1993). "Thus, an employee has only those rights

---

and receive a monthly amount in decreased amount. Benefits are paid from the amount put in by the State. If retirees don't die, they will exceed the MSLA in 12 to 15 yrs and their benefits will continue until they die. (Beneficiary Br. at 12.) Her argument essentially seems to be that, while allowing her to continue to receive the accelerated COLA may be actuarially incorrect because it will allow her to receive more than she is "suppose to receive," her living past her actuarially estimated life-span will also result in her receiving more than "she is suppose to." Thus,

Beneficiary seems to be arguing that, if the latter is permissible, the former should be permissible too.

**12.** The Supreme Court also noted that "the basis on which [the Code was] founded is neither charitable nor benevolent [but that t]hese appropriations are for delayed compensation for these years of continued service actually given in the performance of public duties . . . ." *Dom v. State Employes' Retirement Board*, 345 Pa. 489, 494 n. 3, 28 A.2d 796, 799 n. 3 (1942).

created by statute and none beyond it." *Bittenbender*, 622 A.2d at 405.

■ In this case, SERS argues, and the Board concluded, that Beneficiary's contractual annuity rights were established by the statute in effect at the time she selected her retirement package. We see no error in this determination. Indeed, long-standing authority of the Pennsylvania Supreme Court supports this conclusion. *See generally Dom*, 345 Pa. at 496, 28 A.2d at 799 (finding that the beneficiary's completion of the statutorily required requirements "vested the designated beneficiary with the rights given the beneficiary by the statute.")

At the time of her retirement, the Code presented Beneficiary with several different options for how her retirement benefits could be paid. She was able to choose either "a maximum single life annuity" or a "reduced annuity certified by the actuary to be actuarially equivalent to the maximum single life annuity." 71 Pa.C.S. § 5705. The statute provided four different options for "reduced annuit[ies]" and Beneficiary selected Option 4. Option 4 "entailed accelerated benefit payments to employees retiring before age 65 from the date of retirement until age 65, followed by reduced payments upon reaching age 65, thereby allowing a retiree to receive more benefits 'up front.' " *Cosgrove*, 665 A.2d at 871.

As noted above, the statutory terms and conditions of each of these options required that each annuity payment plan be actuarially equivalent to the MSLA. Beneficiary correctly notes that the actuarial system is not able to determine with absolute certainty how long a particular recipient will be receiving benefits. However, the actuarial system, and with it the requirement that the retirement options be actuarially equivalent, provides a reasonable, structured, and legally accepted manner of striving to harmonize the actual amount of benefits received under the differing methods for receiving them. Actuarial equivalency, thus, strives to make sure that a person who selects Option 4, and thereby receives accelerated annuities upfront, essentially receives the same benefits as a person who selects to receive their benefits at a steady, unaccelerated level.

In this case, allowing COLAs calculated on an accelerated annuity, which is a larger annuity than one would normally receive, to continue when the annuity is reduced, would give those beneficiaries a bonus above and beyond the COLA amounts received by beneficiaries receiving standard annuities for the full duration. The Examiner, in his decision, as adopted by the Board, addresses this point:

> Because Claimant's accelerated ... monthly annuity payment was larger than her "regular" ... annuity payment would have been, each of her COLAs was larger than what she would have received under a "regular" ... benefit. In other words, another way that SERS could have applied the COLA increases to the Claimant's retirement benefit would have been to calculate her monthly single life annuity and determine what her monthly benefit payment would have been and then applied the percentage COLAs to that amount. That would have kept her COLA payments the same after age 65 as before but would have provided the Claimant with lower COLA payments initially.... Claimant received enhanced annuity payments for more than 12 years and the enhanced COLAs for more than seven years. To continue that practice would be actuarially incorrect.

(Examiner Op. at 14.) The Option 4 annuity payment plan, under the statute, was

required to be actuarially equivalent to the MSLA. This actuarial equivalency was based on both the accelerated amount and the subsequent reduction; it, therefore, follows that the COLAs should be based on both the accelerated amount and the subsequent reduction. Thus, the COLAs should be reduced in conjunction with the reduced annuity.[13] Nothing in the language of the applicable COLAs compels a different conclusion.[14]

Given our standard of deference to the Board's interpretation and application of the Code, and following our review of the facts and arguments in this case, we cannot say that the Board's decision is clearly erroneous. For these reasons, we affirm the Board's order.

## ORDER

**NOW,** October 16, 2006, the order of the State Employees' Retirement Board in the above-captioned matter is hereby affirmed.

---

13. Surprisingly, in her Reply Brief before this Court, Beneficiary seems to agree with this same conclusion. In it, she notes that:

> SERS calculated my COLAs for the years before I reached age 65. They did not make [sic] calculate my annuity after the age of 65. Mr. Shoemaker and I did the calculation prior to our retirement. We determined that we would receive an increased COLA after we turned 65, *our COLAs would be at a decreased amount since our annuity would be decreased.* We figured on 10 years before and 10 years after age 65. We figured it would even itself out after this period.

(Beneficiary Reply Br. at 10–11 (emphasis added).) In the next paragraph, she then argues that "she did not agree to have [her] COLAs reduced" and that "COLAs had never been reduced in the past. *No retiree would have anticipated this."* (Beneficiary Reply Br. at 11 (emphasis added).) However, as indicated in the prior paragraph of her Reply Brief, Beneficiary apparently did anticipate a reduction in her COLAs. This apparent contradiction and seeming concession of her position, arguably provides a basis, by itself, in which to deny her appeal. We, like the Board, have nonetheless reviewed and addressed each of the arguments she raises before this Court and, as discussed, find each to be without merit.

14. We are not persuaded by Beneficiary's argument that the imprecision of the actuarial system justifies Beneficiary's continued receipt of the excess COLA amounts during the reduced annuity period. As noted above, the actuarial system is used to harmonize, as much as possible, the ultimate amount of benefits received by a beneficiary, regardless of the retirement payment option chosen. In the absence of clear language from the Legislature of its intent to depart from this principle of the retirement system and treat individuals receiving an accelerated option differently than those not receiving an accelerated option, it seems the better principle is to presume that, consistent with the Code, the Legislature intended, in the applicable COLAs, to treat beneficiaries equally, regardless of the retirement option chosen.

We also agree with the Board's rejection of Beneficiary's argument that the Examiner was biased against her. Accepting Beneficiary's averments as to the nature of the conversation between the Examiner or his staff member and Director Miller following the hearing, we find nothing to suggest any impropriety on the Examiner's part. The mere exchange of personal pleasantries following the hearing does not rise to the level of impropriety, particularly where, as here, Beneficiary's own witnesses supported the conclusions the Examiner drew from testimony of SERS's representatives. We find no error in the Board's resolution of this issue. Beneficiary also notes that the "Hearing Officer complimented Mrs. Hoover for admitting that she did not tell us our COLAs would be reduced. You don't compliment a person for admitting they didn't do their job." (Beneficiary Br. at 15.). Beneficiary has not established that SERS was required to discuss COLAs and, indeed, under *Welsh* and *Marron by Marron,* it seems that discussion of COLAs fell outside SERS representatives' responsibilities. We find no error in the Board's handling of this issue.