**Teresa M. VINE, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided Sept. 18, 2008.

James J. West, Harrisburg, for petitioner.

Salvatore A. Darigo, Jr., Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this petition for review from an order of the State Employees' Retirement Board (Board), we are confronted with a former member of the State Employees' Retirement System (SERS) who, years later, seeks to change the retirement elections made by her attorney-in-fact during her temporary mental incapacity. The novel issues before us involve the validity of elections and the ability of a member to later avoid them.

In particular, Teresa M. Vine (Petitioner) seeks review of an order denying her request to void the withdrawal annuity (early retirement benefit) election made for her by her husband at the time, through a power of attorney, and to elect a disability annuity retroactive to the effective date of her retirement.

## I. Factual Background

Petitioner became a member of SERS in 1969, when she began employment with the Pennsylvania Department of General Services. On January 24, 1998, after 29 years of state service, Petitioner was involved in a serious motor vehicle accident in Virginia. She was hospitalized at the University of Virginia Hospital. Petitioner suffered fractured ribs and multiple broken bones in her back and leg as a result of the accident. These injuries ultimately resulted in paraplegia.

Two days later, on January 26, 1998, Petitioner suffered a serious stroke which was also directly related to the accident. This stroke left Petitioner with right side weakness and global aphasia, a condition that rendered her unable to speak or comprehend.[1]

Nonetheless, a power of attorney for Petitioner was executed on January 30, 1998, rendering Petitioner's husband at the time, Robert Vine, as her attorney-in-fact. Petitioner's husband received the specific authority to make decisions for medical treatment, pain medication, withholding of consent for procedures and removal from medical or nursing facilities, and to execute releases of health care personnel. In addition, Petitioner's husband was granted general powers to conduct all business and make decisions on Petitioner's behalf, including the enumerated powers to make gifts and to engage in retirement plan transactions. Notably, the document also provided, "This Power of Attorney shall not be affected by any disability on my behalf, including the event that I become incompetent to handle my affairs." Reproduced Record (R.R.) at 225a.

With respect to Petitioner's signature, there was simply an "x" marked on the appropriate line surrounded on the top and sides by the notation "Her mark." A registered nurse at the University Hospital signed as a witness, and the power of attorney was notarized by a Commonwealth of Virginia notary public.

On February 23, 1998, several days after Petitioner's employment ended, Petitioner's husband met with Deborah Thorpe, a

---

1. The condition of "aphasia" is defined as "[t]he loss or impairment of one's ability to express thoughts and ideas by means of speech, writing, and signs (or gestures); and/or to understanding speech, writing, and sign language. The condition of aphasia is *not* due to a mechanical defect in the structures of the speech organs, the eyes, or the hearing organs; it is due to the loss by the brain of its ability to interpret the information received from the eyes or ears, and to send out the directing impulses to the organs involved in speech, writing, etc." J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder A–475 (Matthew Bender & Co., 1998); Reproduced Record (R.R.) at 255a.

SERS retirement counselor. While Ms. Thorpe was aware that Petitioner had been involved in a motor vehicle accident, she was not aware of Petitioner's particular health situation. Petitioner's husband provided Ms. Thorpe with the power of attorney, which she reviewed and placed a copy in the file. As the power of attorney appeared to be valid on its face, Ms. Thorpe began discussing the various retirement options with Petitioner's husband.

Petitioner's husband elected to withdraw an amount equal to Petitioner's total accumulated deductions under Option 4,[2] and he further selected Survivor Option 2. Under Survivor Option 2, the survivor is paid the same monthly payment as the SERS member received prior to the death. Petitioner's husband declined to elect the disability retirement option. Under this option, Petitioner's accumulated deductions would not have been available for withdrawal, but her monthly benefit would have been greater.[3]

Several months later, in August, 1998, Petitioner and her husband moved to Georgia. At that point she became aware that she was receiving retirement benefits. R.R. at 164a. At some point she recovered from her inability to speak and comprehend. *Id.* at 155a; Hearing Examiner Op., Proposed Finding No. 19, R.R. at 428a.

In August of 2003, Petitioner's husband filed for divorce. At that time, Petitioner learned of her husband's retirement election on her behalf. Prior to that time, Petitioner was unaware that her husband declined the disability retirement option.

## II. Procedural Background

In October, 2003, Petitioner sent a letter to SERS requesting to change her retirement election to disability retirement based upon her permanent physical disability resulting from the 1998 accident. SERS replied that Petitioner was unable to change her election to disability retirement.[4]

Upon an eventual appeal to the Board, a hearing examiner conducted an administrative hearing. Before the hearing examiner, Petitioner presented an affidavit and numerous medical records in support of her argument that she was incapacitated at the time she allegedly placed her mark on the power of attorney. Petitioner also presented the testimony of her sister, Deborah Russo, and the deposition testimony of Dr. Norman Haueisen. SERS presented the testimony of three different employees, all of whom handled Petitioner's claim at various times. Thereafter, the hearing examiner issued findings and a recommendation in favor of Petitioner. In his opinion, the hearing examiner concluded that Petitioner was incapacitated at the time she allegedly placed a mark on the power of attorney, rendering it void. The hearing examiner further concluded that Petitioner's husband was unable to make retirement elections on Petitioner's behalf. The hearing examiner recommended that Petitioner's request to elect disability retirement retroactive to the date of her accident be granted.

---

2. The accumulated deductions totaled $47,226.96. Petitioner's husband rolled over the taxable contributions, approximately $42,000.00, to avoid adverse tax consequences. He received a lump-sum payment, approximately $5,000.00, of the non-taxable contributions.

3. Since Petitioner had 25 years of service at the time of her accident, there were no differences in the health care coverage available to her under any of these options.

4. SERS noted that Petitioner could change to another retirement option due to divorce but could not change her election entirely to a disability retirement.

A sharply divided Board,[5] however, rejected the recommendation of the hearing examiner. Instead, the Board majority issued its own opinion and order denying Petitioner's request. In rendering its opinion, the Board majority noted that SERS is a creature of statute and its members have only those rights recognized by the State Employees' Retirement Code (Code).[6] Citing 71 Pa.C.S. § 5907(f) and (k), the Board majority also noted that persons acting as the legal representatives of members may apply for early retirement or disability benefits on the member's behalf. Further, citing 20 Pa.C.S. § 5608 (relating to third party liability and immunity, quoted at length below), the Board majority noted that persons who fail to comply with an agent's instructions without reasonable cause are civilly liable for damages and that persons who act in good faith reliance on a power of attorney are immune from liability for the results of their actions.

The Board majority concluded that Petitioner failed to establish that the power of attorney was not executed in accordance with Pennsylvania or Virginia law. It also concluded that Petitioner failed to establish that third parties have a duty to investigate a principal's capacity.

Important for current purposes, the Board majority declined to make any findings regarding Petitioner's mental or physical condition, capacity or competence in January and February, 1998. Board Op. at 8 n. 7; R.R. at 466a. Instead, it made new findings regarding the actions of SERS. In essence, it found that SERS' employees knew of Petitioner's car accident but did not have any information regarding her condition or health status, and that there were no facts or circumstances known to SERS that would have prevented it from relying on the power of attorney in good faith. Board Op. at 10, Finding of Fact No. 7; R.R. at 468a.

Accordingly, the Board majority concluded unequivocally that SERS acted properly in providing retirement counseling to Petitioner's attorney-in-fact and in accepting and processing the retirement application. The Board majority noted that SERS was presented with a facially valid power of attorney, which specifically authorized retirement plan transactions. The power of attorney also specifically empowered the making of gifts, thus any gift aspect in the survivor benefit election was authorized. The Board majority stated, "Our review of the record reveals that there was no reasonable cause for SERS to not comply with [the attorney-in-fact's] instructions regarding [Petitioner's] SERS benefits." Board Op. at 7; R.R. at 465a.

Finally, the Board majority concluded that it lacked jurisdiction to decide whether Petitioner lacked mental capacity and whether the power of attorney was void. Rather, Petitioner's attorney-in-fact had apparent authority to act for her, and his actions bound the parties. Pursuant to 20 Pa.C.S. § 5608(b) (any person who acts in good faith reliance on power of attorney shall incur no liability for acting in accordance with instructions of agent), the Board majority felt restrained from granting any relief or change of annuity type or payment plan.

Petitioner thereafter filed a petition for review with this Court. Our scope of review is limited to determining whether an error of law was committed, whether sub-

---

5. The Board voted six to five to reject Petitioner's appeal. The dissenting votes were noted, but no dissenting opinion was rendered.

6. 71 Pa.C.S. §§ 5105–5956.

stantial evidence supports the necessary findings of fact, or whether constitutional rights have been violated. *Hoffman v. State Employees' Ret. Bd.*, 915 A.2d 674 (Pa.Cmwlth.2006).

## III. Contentions

Petitioner initially argues that a power of attorney given by an incapacitated person is invalid and void. Petitioner notes that the hearing examiner properly cited *Wilhelm v. Wilhelm*, 441 Pa.Super. 230, 657 A.2d 34 (1995), for the proposition that if a person granting a power of attorney was incapacitated at the time the power was granted, then the power of attorney must be held to be invalid. While Petitioner notes a lack of precedent dealing with invalid and void powers of attorney in Pennsylvania, she asserts that the precept is obvious and does not frequently reach the appellate level. Petitioner cites various legal treatises and restatements as well as case law from other states to confirm the fundamental and obvious character of the proposition in *Wilhelm.*

Petitioner next argues that the Board's reliance on 20 Pa.C.S. § 5608 is misplaced. Petitioner notes that the comments found immediately following 20 Pa.C.S. § 5604 (relating to durable powers of attorney), which include comments by the National Conference of Commissioners on Uniform State Laws, provide that "[i]n this and following sections, it is assumed that the principal is competent when the power of attorney is signed. If this is not the case,

nothing in this Act is intended to alter the result that would be reached under general principles of law." Hence, Petitioner argues that the Board majority was mistaken in its belief that 20 Pa.C.S. § 5608 somehow removes its jurisdiction and authorizes or mandates that it deny Petitioner disability benefits based upon a void and invalid power of attorney.

Finally, Petitioner argues that this is not a case where SERS is prejudiced by reliance on a power of attorney; rather, this is a case where a void power of attorney was used to make an election and Petitioner, now competent, is able to make a valid election. Petitioner questions why the Board would involve a statute aimed at third party good faith reliance instead of performing its statutory duty under the Code[7] to correct and adjust errors when found, regardless of the intentional or unintentional nature of the error.

In response, the Board first contends that Petitioner cannot void the early retirement benefit application executed in 1998. Under Pennsylvania law, SERS was required by statute to comply with the instructions of the attorney-in-fact because its employees had no reasonable cause to question the validity of the power of attorney. Also, citing 71 Pa.C.S. § 5907(j), the Board contends that the Code does not permit Petitioner to change her retirement annuity election from early retirement to disability retirement.[8] *See also Crouse v.*

7. 71 Pa.C.S. § 5954(b), provides in full as follows:

Should any change or mistake in records result in any member, beneficiary or survivor annuitant receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the [B]oard shall correct the error and so far as practicable

shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.

8. Section 5907(j) specifically prohibits an annuitant from changing benefit plans, with limited exceptions not applicable to this case. 71 Pa.C.S. § 5907(j).

*State Employes' Ret. Sys.*, 729 A.2d 1268 (Pa.Cmwlth.1999).

Petitioner's construction of the statute controlling liability of third parties to an agency relationship, 20 Pa.C.S. § 5608, leads to an absurd result in which no third party would comply with an agent's instructions without the principal's ratification. Also, Petitioner's construction creates an inequitable situation by transferring liability from a misfeasant agent to a third party with no knowledge of the underlying facts.

The Board asserts SERS relied on the power of attorney in good faith. As such, it is immunized pursuant to 20 Pa.C.S. § 5608(b). Good faith reliance on a power of attorney cannot be conditioned on a requirement that those relying on it investigate the circumstances of appointment before taking action. In the absence of knowledge of irregularities in the power of attorney, SERS is protected by the "safe harbor" provided by 20 Pa.C.S. § 5608(b).

Finally, the Board highlights the lack of evidence that Petitioner's retirement benefit payments were calculated incorrectly. That another benefit option may produce a larger monthly payment does not establish error. Therefore, the Code's error correction provision is not implicated.

## IV. Discussion

For the reasons more fully set forth below, we reject Petitioner's contention that the power of attorney was void. Rather, we conclude that under Pennsylvania common law the power of attorney and transaction undertaken pursuant to it were voidable. The common law in Pennsylvania, however, was modified by several statutes, including the Pennsylvania version of the Uniform Durable Power of Attorney Act, 20 Pa.C.S. §§ 5601–5611. The effect

of these modifications was to limit subsequent avoidance of the acts of an apparent agent. These conclusions are consistent with the weight of contemporary authority.

### A. Pennsylvania Law

 In Pennsylvania, mental competence to do business is presumed, and the burden lies on him who denies it. *Der Hagopian v. Eskandarian*, 396 Pa. 401, 153 A.2d 897 (1959), *cert. denied*, 361 U.S. 938, 80 S.Ct. 381, 4 L.Ed.2d 358 (1960). Thus, contracts made with an incompetent before his adjudication as weakminded are voidable and can be avoided only on proper showing that he was in fact incompetent at the time. *Der Hagopian; see Harrisburg Trust Co. v. Rashinsky*, 59 Dauph. 399 (1949). The rule is otherwise after adjudication, when transactions are presumably invalid. *Der Hagopian.* In the parlance of a bygone era, "[e]ven a lunatic may be liable if a transaction is for his benefit and there is no evidence of overruling." *Id.* at 404, 153 A.2d at 899 (citations omitted).

The difference between a void transaction and a voidable one is noteworthy. Void acts have no legal effect whatsoever. They are absolute nullities. *See* Black's Law Dictionary at 1604 (8th Ed.2004). Voidable acts, however, are valid until annulled. *Id.* at 1605, 153 A.2d 897. Where, as here, third parties become involved before an attempt at avoidance, the difference between a void transaction and a voidable one is critical.

In 1982, Pennsylvania incorporated its version of the Uniform Durable Power of Attorney Act into existing statutes on the subject.[9] It includes a provision that acts done by an agent pursuant to a durable power of attorney during any period of incapacity of the principal shall have the same effect and bind the principal as if the

---

**9.** Act of February 18, 1982, P.L. 45, ultimately codified in 20 Pa.C.S. Chapter 56.

principal were competent and not disabled. 20 Pa.C.S. § 5604(b).

The statute was amended several times, including a 1992 amendment which added the following provision:

(a) **Third party liability.**—*Any person who is given instructions by an agent in accordance with the terms of a power of attorney shall comply with the instructions. Any person who without reasonable cause fails to comply with those instructions shall be subject to civil liability for any damages resulting from noncompliance.* Reasonable cause under this subsection shall include, but not be limited to, a good faith report having been made by the third party to the local protective services agency regarding abuse, neglect, exploitation or abandonment pursuant to section 302 of the act of November 6, 1987 (P.L. 381, No. 79), known as the Older Adults Protective Services Act.

(b) **Third party immunity.**—*Any person who acts in good faith reliance on a power of attorney shall incur no liability as a result of acting in accordance with the instructions of the agent.*

20 Pa.C.S. § 5608 (emphasis added). This new provision was "designed to encourage third parties to follow the instructions of an attorney-in-fact and to be relieved of liability for doing so." 20 Pa.C.S. § 5608, Jt. St. Gov't Comm. Comment—1992.

Other Pennsylvania statutes reduce risks for third parties who transact business in good faith with an agent. Thus, in 1990, a section of Pennsylvania's version of the Uniform Commercial Code was modified to protect banks when a customer loses capacity but the bank does not have actual knowledge of an adjudication of incompetency. 13 Pa.C.S. § 4405. Similarly, under Pennsylvania's version of the Uniform Partnership Act,[10] a partner's loss of capacity does not automatically dissolve the partnership and terminate fellow partners' authority. *See* 15 Pa.C.S. § 8353.

■ In sum, in Pennsylvania transactions by or on behalf of a person not adjudicated incompetent are presumed valid. In certain circumstances, the transactions may be avoided, but in other circumstances, third parties without knowledge of a person's loss of capacity are protected, and the transactions may not be avoided.

In this case, Petitioner was never adjudicated an incompetent. Therefore, transactions on her behalf are presumed valid. To overcome that presumption, Petitioner needed to prove that she was incompetent at the time. In addition, Petitioner needed to overcome the Pennsylvania statute dealing with durable powers of attorney. She could do so by proving that SERS did not act in good faith, or that SERS lacked reasonable cause to comply with the instructions of her attorney-in-fact. *See* 20 Pa.C.S. §§ 5602(b), 5608.

■ The Board is the fact-finder. Questions of resolving conflicts in the evidence, witness credibility and evidentiary weight are within the exclusive discretion of the Board. *Hoffman.* Here, the Board found that SERS acted in good faith reliance on a power of attorney valid on its face. The Board also found that there was no reasonable cause for SERS to refuse to comply with the instructions of Petitioner's attorney-in-fact. Further, the Board determined that the attorney-in-fact had apparent authority. As Petitioner does not challenge these determinations as unsupported by substantial evidence, they are binding, and they require resolution against Petitioner. *Westmoreland County*

10. 15 Pa.C.S. §§ 8301–8365.

*v. Workers' Comp. Appeal Bd. (Fuller),* 942 A.2d 213 (Pa.Cmwlth.2008).

We note Petitioner's reliance on *Wilhelm,* for the proposition that a power of attorney taken from an incompetent person is void. That case is a decision of the Superior Court. Unfortunately, it fails to reference our Supreme Court's earlier decision in *Der Hagopian,* holding that before adjudication, an incompetent's transactions are voidable. Indeed, the Superior Court in *Wilhelm* does not cite any authority for its proclamation, and it does not discuss the effect of the Pennsylvania statute dealing with powers of attorney. As we lack authority to disregard the decisions of our Supreme Court or the clear language of our statutes, we decline to resolve this case on the basis of *Wilhelm.*

### B. Restatement (Third) of Agency

#### 1. Section 3.04, Capacity To Act As Principal

Our legal conclusions are consistent with the weight of contemporary authority, as embodied in the Restatement (Third) of Agency (2006). Thus, Section 3.04, entitled "Capacity To Act As Principal," provides in pertinent part: "(1) An individual has capacity to act as a principal in a relationship of agency as defined in § 1.01 if, at the time the agent takes action, the individual would have capacity if acting in person." Restatement (Third) of Agency § 3.04 (2006).

#### 2. Section 3.08, Loss Of Capacity

However, a principal's loss of capacity has consequences stated in Restatement (Third) of Agency § 3.08. That Section, entitled "Loss Of Capacity," provides in pertinent part:

(1) An individual principal's loss of capacity to do an act terminates the agent's actual authority to do the act. The termination is effective only when

the agent has notice that the principal's loss of capacity is permanent or that the principal has been adjudicated to lack capacity. *The termination is also effective as against a third party with whom the agent deals when the third party has notice that the principal's loss of capacity is permanent or that the principal has been adjudicated to lack capacity.*

(2) A written instrument may make an agent's actual authority effective upon a principal's loss of capacity, or confer it irrevocably regardless of such loss.

Restatement (Third) of Agency § 3.08 (2006) (emphasis added).

Of particular significance, in lengthy Comment *b* the authors explain that an individual's loss of capacity does *not* automatically terminate an agent's authority to bind his principal. That Comment provides in relevant part:

An individual's loss of capacity does not automatically terminate an agent's actual authority. Likewise, a principal's loss of capacity does not automatically or by itself terminate an agent's apparent authority. See § 3.11, Comment *b.* This is contrary to the position taken in Restatement Second, Agency § 122(1).... This rule voided all transactions made by the agent on the principal's behalf....

\* \* \*

Most recent cases reject the rule stated in Restatement Second, Agency § 122. Instead, they treat a principal's loss of capacity as a condition comparable to minority that does not destroy legal personhood but justifies an election whether to be bound by transactions. Under this approach, transactions are voidable, not void, unless the principal's loss of capacity is known at the outset to be permanent or a court has adjudicated

the principal to lack capacity. If the principal recovers capacity, the principal may exercise the right to disaffirm or ratify transactions. . . .

The drawback to this approach is that it does not necessarily protect agents and third parties who have acted reasonably in light of the principal's manifestations of assent and who lack notice of the principal's incapacity. Loss of capacity is not fully analogous to minority because, absent a judicial determination of incapacity, it is less ascertainable by lay persons on the basis of objectively observable criteria, including such official indicia of age as birth certificates and drivers' licenses. If the principal elects to disaffirm a transaction upon recovering capacity, the agent risks liability to the third party for breaching the agent's express or implied warranty of authority. See § 6.10. Moreover, *if the third party did not have notice of the principal's loss of capacity, the third party would not have notice that the transaction might later be disaffirmed by the principal. Finally, lacking notice of the principal's loss of capacity, the third party lacks occasion to attempt on that basis to take advantage of the principal. None of the cases that treat such transactions as voidable involve these consequences.*

*The rule stated in subsection (1), based on the policy of the statutes discussed above [involving durable powers of attorney, uniform commercial code and partnerships], does not make such transactions voidable.* Instead, it provides that the termination of actual authority that follows a principal's loss of legal capacity is not effective when the agent did not have notice of the principal's loss of capacity. If the agent did not have such notice, but the third party had notice of the principal's incapacity, the termination of actual authority is

effective as against the third party. *If the agent had such notice, but the third party did not have notice, the principal may be bound by the doctrine of apparent authority.* See § 3.11, Comment *b*. For purposes of subsection (1), notice of a principal's incapacity requires notice of an adjudication to that effect, or notice of circumstances establishing that the principal's loss of capacity is permanent.

Although the rule in subsection (1) does not permit a principal to disaffirm transactions if the principal regains legal capacity, it protects the principal because the principal is not bound by transactions that would exceed the agent's actual authority, if the principal had capacity at the time the agent acted. *If the principal is bound to the third party because the agent acted with apparent authority, the principal has a claim against the agent.*

Restatement (Third) of Agency § 3.08 (2006), Comment *b* (emphasis added).

▇▇ Thus, the loss of capacity by a principal does not automatically terminate an agent's authority. Transactions undertaken by the agent after a principal's loss of capacity may be voidable in certain circumstances, but not voidable in others. Where, as here, a third party has no notice of an adjudication of incompetency or of a permanent loss of capacity in the principal, the principal may be bound to the third party by the agent's apparent authority, and the transaction may not be avoided.

As discussed in the comment, there are two reasons to support this outcome. First, under these circumstances the third party would not have notice that the transactions might later be disaffirmed. Second, without notice of the principal's loss of capacity, the third party lacks occasion to attempt to take advantage of the principal. Where the transaction may not be

avoided because of the agent's apparent authority, the principal's remedy is against her agent, not the third party.

### 3. Section 3.11, Termination Of Apparent Authority

Section 3.11, entitled "Termination Of Apparent Authority," confirms the foregoing analysis:

(1) The termination of actual authority does not by itself end any apparent authority held by an agent.

(2) Apparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority.

Restatement (Third) of Agency, § 3.11 (2006). Comment *b* to Section 3.11 adds the following pertinent explanation (with emphasis added):

*An agent may act with apparent authority following the principal's death or loss of capacity because the basis of apparent authority is a principal's manifestation to third parties, coupled with a third party's reasonable belief that the agent acts with actual authority.* See §§ 2.03 and 3.03. Neither element requires that the principal consent or manifest assent at the time the agent takes action. When third parties do not have notice that the principal has died or lost capacity, they may reasonably believe the agent to be authorized.

Moreover, the rule that the principal's death terminates apparent authority is inconsistent with the effect of contemporary legislation, which in many respects is protective of third parties who act without knowledge of the principal's death or loss of capacity.... *The executed power constitutes a manifestation of the principal's assent, made to the agent*

*and to third parties as well when the power is displayed to them.*

*Id.* at Comment *b.*

██ In sum, apparent authority is not automatically terminated by the principal's loss of capacity. An agent may act with apparent authority following a principal's loss of capacity where a third party, such as SERS, has a reasonable belief that the agent acts with actual authority. This belief may be reasonable where a power of attorney is displayed and the third party does not have notice that the principal lost capacity.

Applying the rules set forth in the Restatement to the facts as found by the Board, we reach the same results as under Pennsylvania law. Thus, Petitioner's loss of capacity does not automatically terminate the apparent authority of her attorney-in-fact. In the absence of knowledge of her loss of capacity, SERS may rely on the apparent authority evinced by a power of attorney. The Board specifically found that there were no facts or circumstances known to SERS that would have prevented SERS from relying on the power of attorney in good faith.

We acknowledge that our Supreme Court has not yet adopted these sections of the Restatement (Third) of Agency. We believe, however, that the rules are consistent with Pennsylvania law, and we predict that the Court will embrace the Restatement provisions when the occasion arises.

### V. Conclusion

For all the reasons discussed, we affirm the decision of the Board, which denied Petitioner's request to void the early retirement election made for her by her attorney-in-fact and to apply for a disability annuity retroactive to her effective date

of retirement. This decision is entered without prejudice to any remedies Petitioner may have against her attorney-in-fact.[11]

## ORDER

**AND NOW,** this 18th day of September, 2008, the order of the State Employees' Retirement Board dated September 21, 2007 regarding the Claim of Teresa M. Vine, is **AFFIRMED.**

## CONCURRING OPINION BY Senior Judge McCLOSKEY.

I concur with the result reached by the majority in this case, but I write separately to address my concerns with the adequacy of the review, or lack thereof, conducted by the State Employees' Retirement Board (the Board) with regard to the power of attorney at issue in this case. I agree with the majority's conclusion that a review of the evidence of record in this case fails to establish a lack of good faith on the part of the Board or the State Employees' Retirement System (SERS).[1]

Nevertheless, I note that the Board's own regulations provide the following:

*Ineligibility to select any benefit.* When a member enters upon retirement, he shall either execute the application on his own behalf or, in the case where the member is mentally incompetent to do so, the application shall be executed by a guardian appointed by a court. In the case of a member who is physically un-able to file the application, it may be filed by anyone possessing a power of attorney. In all instances, the Board will be furnished and shall review the legal documents designating persons who are eligible to act on behalf of eligible members.

4 Pa.Code § 249.7(e).

By its very terms, this regulation distinguishes between mental and physical incompetency, the former requiring a court-appointed guardian, and further mandates review of any legal document which purport to designate a person to act on another's behalf. The power of attorney at issue in this case was merely executed with the mark of an "X" on the line designated for the signature of Petitioner. In light of the regulation cited above, it is impossible for this member of the Court to believe that a power of attorney executed in this manner would not raise a red flag and mandate closer scrutiny by the Board/ SERS. Unfortunately, Petitioner failed to raise an issue with respect to this regulation before the hearing examiner or the Board and, hence, this issue was not ripe for review by this Court.

---

11. Given these holdings it is unnecessary for us to discuss whether the Board enjoyed jurisdiction to decide whether the durable power of attorney was void and whether Petitioner lacked mental capacity.

1. I further agree with the majority insofar as it enters its decision without prejudice to any remedies Teresa M. Vine (Petitioner) may have against her attorney-in-fact.