9 A.3d 1150

Teresa M. VINE, Appellant

v.

COMMONWEALTH of Pennsylvania, STATE EMPLOYEES'
RETIREMENT BOARD, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Re–Submitted Nov. 22, 2010.

Decided Dec. 21, 2010.

James J. West, West Long LLC, Harrisburg, for Teresa M. Vine.

Michael A. Budin, Salvatore Anthony Darigo, Jr. and Samuel Sangman Yun, PA State Employees' Retirement System, for State Employees' Retirement Board.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

This appeal involves the statutory immunity afforded to third parties who act on the instructions of an attorney-in-fact. More specifically, we consider the position of the State Employees' Retirement System Board that immunity is conferred even where the power of attorney is void or voidable.

Appellant Teresa Vine worked for the Commonwealth for 29 years and is a member of the State Employees' Retirement System ("SERS"). On January 24, 1998, she was involved in an automobile accident in Virginia and sustained severe injuries resulting in paraplegia. Two days later, on January 26, 1998, Appellant suffered a stroke that left her with right side weakness and global aphasia, a condition that rendered her unable to speak or comprehend. She did not respond to family members who visited her several weeks after the accident, and she has no memory of the time following the accident.[1]

Four days after her stroke, on January 30, 1998, Appellant purportedly executed a power of attorney (the "POA"), making her then-husband, Robert Vine ("Robert"), her attorney-in-fact and giving him authority to, among other things, engage in retirement-plan transactions on her behalf. Appellant's signature on the POA consisted of an "x" marked on the appropriate line, accompanied by the notation, "her mark." A nurse at the hospital in Virginia signed as a witness, and the document was notarized. According to the testimony of Appellant's physician in Pennsylvania, who reviewed the medical records from her hospitalization in Virginia, at the time Appellant supposedly executed the POA she: was suffering from a traumatic brain injury; was intubated (meaning that a machine was breathing for her); was being treated with sedatives which affected her reasoning and judgment; and was unable to make important life decisions due to her aphasia. Appellant has now recovered mentally, but remains a paraplegic. *See In re Account of Theresa M. Vine,* SERS No.2004–21, at 2–3 (Opinion of Hearing Examiner, Sept. 20, 2006) ("Proposed Report").[2]

1. The Commonwealth Court explained that aphasia entails the brain's loss of its ability to interpret sensory information and to transmit directing impulses to the organs involved in speech and writing. *See Vine v. SERS,* 956 A.2d 1088, 1090 n. 1 (Pa.Cmwlth.2008) (quoting J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE AND WORD FINDER A–475 (Matthew Bender & Co., 1998)).

2. Under the applicable regulations, the hearing examiner's findings, conclusions, and recommended disposition are memorialized in a pro-

Appellant retired from state employment on February 13, 1998.[3] On February 23, 1998, Robert met with a SERS retirement counselor. The counselor, who knew that Appellant had been involved in an automobile accident but was unaware of Appellant's particular health condition, reviewed the POA and discussed various retirement options available to Appellant. Robert selected Retirement Option 4, which allowed him to withdraw an amount equal to Appellant's total accumulated deductions, rolling over the taxable contributions and receiving payment of Appellant's non-taxable contributions. Although the terms of the disability retirement option were explained to Robert, he did not select that option on Appellant's behalf. If he had done so, Appellant's monthly payments would have been greater, but her accumulated deductions would not have been available for Robert to withdraw. As to survivor benefits, Robert selected Option 2, which entitled him to receive the same monthly payment as Appellant if she predeceased him.[4]

In 2003, Robert filed for divorce, at which time Appellant discovered that she had not been retired on disability. She therefore wrote to SERS, asking to change her election to disability retirement based on her permanent physical disability. SERS denied the request, noting that, while Appellant could select another survivor option in view of her divorce, she could not change to disability retirement. Appellant's request ultimately reached the SERS Board (the "Board"), which scheduled an administrative hearing before a hearing examiner. At the hearing, Appellant asserted that she was incapacitated at the time she allegedly placed an 'x' on the POA, thereby rendering the document invalid. In support of her

posed report, *see* 1 Pa.Code §§ 35.201–35.207, which only becomes a final order if no timely appeal to the agency head is taken. *See id.* § 35.226(a)(3). Here, a timely appeal was lodged.

3. The parties do not dispute the retirement date, although it appears that Appellant was still in the hospital subject to global aphasia at the time.

4. *See* 71 Pa.C.S. §§ 5702, 5704. Since Appellant had 25 years of service at the time of her accident, there were no differences in the health care coverage available to her under any of these options. *See Vine,* 956 A.2d at 1091 n. 3.

allegation of incapacity, Appellant testified and also presented numerous medical records, a physician's deposition testimony interpreting those records, and testimony from a relative. In opposition, SERS adduced the testimony of three employees who had previously handled Appellant's claim.

The hearing examiner filed his proposed report, *see supra* note 2, reflecting a finding that Appellant was incapacitated at the time she allegedly signed the POA. He explained, in this regard, that an incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." Proposed Report at 6 (quoting 20 Pa.C.S. § 5501). In light of Appellant's incapacity, the examiner concluded that the POA was invalid, thereby rendering ineffective any retirement selection made by Robert. *See id.* at 7 (citing *Wilhelm v. Wilhelm*, 441 Pa.Super. 230, 238–40, 657 A.2d 34, 38–39 (1995) (holding that, if a power of attorney is executed when the principal lacks the capacity to sign such a document, in the sense that he cannot understand and appreciate the nature of his actions, it is void and may not be utilized by the purported agent to effectuate financial transactions)). That being the case, the hearing examiner stated that SERS must now return Appellant to the position she occupied prior to Robert's use of the invalid POA, thus allowing her to make her own retirement elections. He elaborated, however, that such relief should be conditioned on Appellant returning all withdrawals taken since her accident, so that SERS would not incur any liability as a result of its reliance on the POA. *See id.* at 8.

In taking exceptions to the proposed report, SERS did not challenge the hearing examiner's finding that Appellant lacked the capacity to execute a valid POA, or that the POA was, in fact, invalid. Rather, SERS asserted that Section 5608 of the Probate, Estates and Fiduciaries Code (the "Code"),[5] *see* 20

5. Act of Feb. 18, 1982, P.L. 45, No. 26 (as amended 20 Pa.C.S. §§ 101–8815).

Pa.C.S. § 5608, supplied it with immunity for good-faith reliance on a power of attorney.[6] SERS argued that it should not be put in a position where it must investigate the facts underlying a facially valid POA. SERS proffered that the imposition of such an investigatory duty would place it in an untenable position, as the undertaking of any inquiry into the circumstances of the POA's execution could cause it to risk incurring liability under Section 5608(a) of the Code, a provision that requires third parties to follow the instructions of an agent designated in a POA. *See id.* § 5608(a). Finally, SERS noted its disagreement with the hearing examiner's suggestion that returning the parties to the *status quo ante* would not result in SERS suffering any liability, as granting such relief might cause administrative difficulties. *See* SERS' Brief on Exceptions to the Opinion of the Hearing Examiner at 4.

In a six-to-five decision, the Board declined to accept the proposed report and issued its own opinion instead. *See In re Account of Teresa M. Vine,* No.2004–21 (SERS Board Sept. 21, 2007) ("Adjudication"). The Board observed, preliminarily, that retirement applications are contracts with SERS, which are generally binding and irrevocable. The Board noted that SERS was provided with a facially valid POA that designated Robert as Appellant's attorney-in-fact and authorized him to conduct retirement transactions on her behalf. In light of this circumstance, the Board stated:

> We conclude that, regardless of the underlying facts, we do not have the authority or jurisdiction to reach the issue of whether or not as a matter of law involving the mental capacity and competency of Claimant, the POA is valid.

**6.** Section 5608 states, in relevant part:
> **(a) Third party liability.**—Any person who is given instructions by an agent in accordance with the terms of a power of attorney shall comply with the instructions. Any person who without reasonable cause fails to comply with those instructions shall be subject to civil liability for any damages resulting from noncompliance....
> **(b) Third party immunity.**—Any person who acts in good faith reliance on a power of attorney shall incur no liability as a result of acting in accordance with the instructions of the agent.
> 20 Pa.C.S. § 5608.

Robert had the apparent authority to act as agent for Claimant in this matter, and thus his actions are binding. Adjudication at 8 (footnote omitted); *see also id.* at 8 n. 7 ("Because of our conclusion that we do not have the legal authority to grant relief on a challenge to action taken under a facially valid POA, we do not need to make fact findings regarding Claimant's mental or physical condition, capacity or competence in January or February 1998."). Thus, the Board considered the POA's facial validity to be unassailable and determined, accordingly, that Section 5608(b) prevented it from granting Appellant's request regardless of hardship or possible inequities, as that statutory provision immunized SERS from liability. *See id.* at 8. The Board did acknowledge that, as a general proposition, it retained the power to retroactively alter retirement benefits, and that it has considered doing so in prior cases where the retiree was alleged to have lacked the capacity to form a contract at the time he or she applied for benefits. It distinguished those cases, however, on the basis that the retiree was the individual who signed the application in person; thus, the Board stated that, in such circumstances, "SERS is a direct party to the contract involving pension benefits and probably can agree to release the other party (the member) from his or her putative contract obligations" based upon a finding of incapacity. *Id.* at 9.[7]

The Commonwealth Court affirmed. *See Vine v. SERS*, 956 A.2d 1088 (Pa.Cmwlth.2008). The court indicated that, under Pennsylvania common law, the POA and transactions undertaken pursuant to it were voidable. It placed substantial emphasis on the distinction between void and voidable transactions, developing that void acts have no significance and are nullities, whereas voidable acts are valid until annulled. *See id.* at 1094 (citing *Der Hagopian v. Eskandarian*, 396 Pa. 401, 404, 153 A.2d 897, 899 (1959)). The court found this distinction significant because here, a third party (SERS) became involved before an attempt at avoidance was made, and, according to the court, Pennsylvania's adoption of the Uniform

7. Although five Board members dissented, no dissenting opinion was filed.

Durable Power of Attorney Act (the "UDPAA") was intended to modify the common law to limit avoidance of the acts of an apparent agent under such circumstances. *See id.* at 1094–95.

The Commonwealth Court explained that this construction of the UDPAA is consistent with the modern trend among Pennsylvania statutes that seek to reduce risks for third parties who transact business in good faith with an agent or an apparent agent. *See id.* at 1095 (referencing the Uniform Commercial Code and the Uniform Partnership Act). Accordingly, the court suggested that the only avenue available to Appellant at the administrative level to nullify the retirement selections made by Robert was to demonstrate that SERS had "reasonable cause" not to comply with Robert's instructions made under his apparent authority, *see* 20 Pa.C.S. § 5608(a), or that SERS did not act in good faith reliance on the POA, *see id.* § 5608(b).[8] Because the Board found that neither condition was proven, and Appellant did not challenge these findings as unsupported by substantial evidence, the court deemed them binding, and, ultimately, fatal to Appellant's claim.[9]

**8.** While the court referenced Section 5608 in connection with the UDPAA, we note that the UDPAA only covers Sections 5604 through 5606 of the Code. *See* 20 Pa.C.S. § 5604, Table of Jurisdictions. Indeed, the present controversy does not implicate any issues regarding the durability of valid POAs, but rather, the consequences of a determination that an alleged POA was never validly executed in the first instance.

**9.** As additional support for its holding, the court referenced various portions of the Third Restatement of Agency that it interpreted as signifying that, once a valid agency relationship has been formed, the apparent authority of the agent is not automatically terminated by a principal's loss of capacity. *See Vine*, 956 A.2d at 1096–98 (citing RESTATEMENT (THIRD) OF AGENCY (2006) §§ 3.04 (pertaining to capacity to act as principal), 3.08 (pertaining to loss of capacity), 3.11 (pertaining to termination of apparent authority)). The Commonwealth Court acknowledged, however, that this Court has not adopted these sections of the Restatement. Moreover, the court did not evaluate how these provisions may pertain in circumstances where the principal is alleged to have lacked the capacity to form a valid agency relationship in the first instance. *See generally* RESTATEMENT (THIRD) OF AGENCY (2006) § 3.04 cmt. b ("The principal's capacity is requisite to a relationship of agency because the agent's actions within the scope of the relationship affect the principal's legal position.").

Senior Judge McCloskey concurred in the result, but wrote separately to address his concerns with the inadequacy of the review conducted by SERS and the Board with respect to the POA at issue. On this point, he stressed that SERS' own regulations provide that, when a member makes a retirement selection, she must ordinarily execute the application herself; if she is not mentally competent to do so, the application can only be executed by a court-appointed guardian. *See* 4 Pa. Code § 249.7(e). By contrast, when a member is physically unable to file the application, anyone possessing a valid POA may file it. *See id.* Senior Judge McCloskey noted that, by its terms, Section 249.7(e) distinguishes between mental and physical incapacity, the former requiring a court-appointed guardian for execution of a retirement application. In light of this provision, and the manner in which the POA was signed— with the mark of an "x" for a signature—he found it "impossible ... to believe" that the POA "would not raise a red flag and mandate closer scrutiny" by SERS employees or by the Board. *Vine,* 956 A.2d at 1099 (McCloskey, S.J., concurring). He concluded, however, that, as Appellant did not advance any argument predicated upon Section 249.7(e) before the hearing examiner or the Board, Appellant could not prevail based on that provision.

This Court granted further review to determine whether, as the Commonwealth Court held, Appellant could only obtain relief if she demonstrated that SERS employees either did not act in good faith, or had reasonable cause to question the POA's validity or Robert Vine's apparent authority. *See Vine v. SERS,* 600 Pa. 625, 969 A.2d 1175 (2009) (*per curiam* ). As noted, the intermediate appellate tribunal emphasized the difference between void and voidable transactions, and concluded that actions taken pursuant to the POA were merely voidable, thus implicating the rights and duties given to third parties under Section 5608. In evaluating the court's reasoning, we must determine whether the void/voidable distinction is of any moment in circumstances such as these, and assess whether the court's understanding of Section 5608 was correct. These are questions of law subject to plenary review.

*See In re Erie Golf Course,* 605 Pa. 484, 501, 992 A.2d 75, 85 (2010).

In seeking reversal, Appellant initially broadly challenges the validity of the POA, referencing *Dexter v. Hall,* 82 U.S. 9, 15 Wall. 9, 21 L.Ed. 73 (1872), in which the U.S. Supreme Court held that a POA taken from a person of unsound mind is void. In *Dexter,* the Court reasoned that it is "difficult to perceive how one incapable of understanding, and of acting in the ordinary affairs of life, can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions." *Id.* at 20. Appellant claims that, given the hearing examiner's finding that she was incapacitated at the time the "x" was placed on the POA, he properly deemed the POA to be void and appropriately concluded that her then-husband's retirement elections made pursuant to it were invalid and subject to modification.

Appellant also asserts that, whether the POA and the subsequent retirement elections are considered void, pursuant to *Dexter,* or merely voidable, pursuant to *Der Hagopian* (on which the Commonwealth Court relied), is not legally significant because, even if they are voidable, by demonstrating that she was incapacitated at the time of creation of the POA, Appellant should have been able to avoid the retirement elections made on her behalf. Indeed, she alleges that *Der Hagopian,* like *Dexter* and *Wilhelm,* supports her position because it makes mental competency the determining factor in whether a transaction can be avoided.[10] Appellant suggests,

10. *Der Hagopian* involved a request to set aside a conveyance of real property. This Court affirmed the chancellor's order denying the request on the basis that the plaintiff was mentally competent on the dates in question. In doing so, the Court explained that

[m]ental competence to do business is presumed and the burden lies on him who denies it.... Contracts made with the incompetent before his adjudication as weakminded are voidable and can be avoided only on proper showing that he was in fact incompetent at the time. After the adjudication, transactions with him are presumably invalid.

*Der Hagopian,* 396 Pa. at 403–04, 153 A.2d at 899 (internal citations omitted).

alternatively, that the equity-related principles elucidated in *Der Hagopian* are limited to scenarios where an innocent third party provides substantial consideration for a transaction, which is different from creating a permanent agency delegation through a durable power of attorney. Indeed, she posits, this case involves Appellant's right to disability benefits based upon 29 years of state service and her paraplegia; SERS, Appellant avers, is not an innocent third party victim, but rather, is an entity statutorily required to correct errors, *see* 71 Pa.C.S. § 5954, and give Appellant something that she earned—disability benefits. Appellant also concludes that the Commonwealth Court's decision leads to an absurd result: a POA can be created for an unconscious person, and that POA will vest apparent authority in whoever it names as the agent, to control that person and his or her property until the person discovers the fraud and puts the world on notice. *See* Brief for Appellant at 22 ("While we have found no Pennsylvania Supreme Court case directly on the point that a power of attorney must be executed by a conscious individual in order to create apparent authority[,] we respectfully submit that this is because of the long established and obvious nature of the proposition . . . .").

Lastly, Appellant avers that, in all events, the SERS counselor had reasonable cause to question the validity of the POA, as the counselor was on notice from Appellant's file that Appellant had functioned at a high level for 29 years and that she did not ordinarily sign her name with an "x." Appellant agrees with the Commonwealth Court concurrence that this should have raised a red flag, particularly as the SERS counselor was aware that Appellant was unable to attend the retirement conference because she had been in an automobile accident, and that her then-husband was waiving important disability benefits for her so that he could obtain survivorship benefits for himself.

The Board counters that, to construe Section 5608 as Appellant suggests would lead to an absurd result, as it would require every third party presented with a facially valid POA to seek the principal's ratification before acting. According to

the Board, the third party would then find itself subject to limitless liability for failing to comply with the agent's instructions so long as it lacked reasonable cause not to comply. *See* 20 Pa.C.S. § 5608(a). This construction would, in the Board's view, render Section 5608 meaningless. *See* Brief for Appellee at 18 ("Adopting Ms. Vine's position and declaring that all acts undertaken pursuant to a defective power are nullities which compel the third party to return the principal to the *status quo ante* requires the complete disregard of Section 560[8](b)'s statutory immunity.").

The Board develops that, under this Court's decision in *Der Hagopian*, a person's mental competence to conduct business transactions is presumed unless and until the person is adjudicated incompetent—and Appellant was never adjudicated incompetent. Therefore, the Board argues, the Commonwealth Court correctly held that the retirement selections made by Robert were presumptively valid. In this respect, the Board indicates that the critical factor is not whether Appellant had the mental capacity to execute a valid POA, but whether Section 5608 supplied the Board with statutory immunity. If it did, the Board notes, then to surmount the presumption of validity attaching to Robert's actions, Appellant bore the burden of proving that SERS acted in bad faith or lacked reasonable cause to comply with his instructions. The Board concludes that the Commonwealth Court was right in determining that Section 5608 immunized it, as one of the Legislature's objectives in enacting this statute was to make it more difficult to nullify transactions accomplished pursuant to a POA by requiring the party seeking avoidance to show, not only incapacity, but that the third party did not properly rely upon a facially valid POA. *See* Brief for Appellee at 21.

The Board indicates that this is particularly so because Section 5608, by its terms, is not limited to POAs ratified by the principal or those that can be demonstrated to be valid after the fact. As Appellant failed to challenge the Board's findings to the effect that SERS acted in good faith and that it lacked reasonable cause not to comply with Robert's instructions, the Board maintains that Appellant is bound by those

findings. Finally, regarding Appellant's claim that the distinction between void and voidable acts is unimportant, the Board characterizes this argument as an attempt to cloud the true issue by shifting the focus from SERS' good faith reliance upon the POA back to Appellant's capacity to execute a POA.

## I.

Initially, we acknowledge that one can reasonably question whether the SERS counselor exercised appropriate circumspection in accepting the POA as valid under the circumstances. Nevertheless, the Board expressly determined that the counselor acted in good faith and lacked reasonable cause not to follow Robert's instructions. As Appellant did not challenge these findings before the Commonwealth Court, she is bound by them for purposes of the present appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Hence, we proceed to the question of whether those findings immunize SERS from liability under Section 5608 of the Code notwithstanding the hearing examiner's finding of incapacity.

"Briefly, our task is to discern the intent of the Legislature, and, in doing so, we first look to the Act's plain language." *Erie Golf Course,* 605 Pa. at 501, 992 A.2d at 85. Here, Section 5608 facially applies only to situations where an "agent" gives instructions pursuant to a "power of attorney," *see supra* note 6; notably, there is no indication in the statutory text that it is intended to apply where a person who is not an agent, but purports to be one or erroneously believes he is one, provides instructions pursuant to a document that is not a valid power of attorney, but appears to be one. Still, the Board assumes that the General Assembly intended such circumstances to come within the scope of Section 5608. The Board thus—at least by implication—argues that the terms "power of attorney," and "agent," as employed in that provision, are broad enough to subsume occasions where the document purporting to be a power of attorney is invalid.

■ While this position is not unreasonable, it is ultimately unavailing for several reasons. First, and as noted, it does not align with the statute's text as well as a literal reading of the terms "agent" and "power of attorney." *See, e.g.,* BLACK'S LAW DICTIONARY 26–27 (3d. pocket ed.2006) (defining an "agent" as "[o]ne who *is authorized* to act for or in place of another" (emphasis added)); *id.* at 551 (defining a "power of attorney" as "[a]n instrument *granting someone authority* to act as agent or attorney-in-fact for the grantor" (emphasis added)).[11]

Moreover, if the General Assembly had intended the broader application advocated by the Board, it could have indicated as much by specifying that Section 5608's scope extends to circumstances where the document in question has indicia of validity regardless of its actual validity, as the legislative bodies of some of our sister States have done. *See, e.g.,* CAL. PROB.CODE § 4303(a)(2) (West 2010) (immunizing persons who act in good faith reliance on powers of attorney where, *inter alia,* "[t]he power of attorney appears on its face to be valid."); 755 ILL. COMP. STAT. 45/2–8 (West 2007 & Cum.Supp.2009) (protecting third parties who act "in good faith reliance on a copy of a document purporting to establish an agency"); WASH. REV.CODE ANN. § 11.94.040(3)(d) (West 2010) (shielding persons who rely on a power of attorney accompanied by an affidavit of the agent stating, *inter alia,* that, to the best of the agent's knowledge, at the time the document was signed the principal was competent to execute it and was not under undue influence). Similarly, the Uniform Power of Attorney Act contains a section expressly allocating to the principal, rather than the third party, the risk that the power of attorney in question is forged or otherwise invalid. *See* UNIF. POWER OF ATTORNEY ACT § 119. Our Legislature, however, has

11. The propriety of our present reference to these definitions is confirmed by the General Assembly's 1999 amendment to Section 5601, which clarifies that, "[a]s used in this chapter, the term 'agent' means a person designated by a principal in a power of attorney to act on behalf of that principal." 20 Pa.C.S. § 5601(f). If the purported principal was incapacitated, the person possessing an alleged power of attorney could not have been designated by her to act on her behalf. It follows that such a person is not an agent for purposes of the provisions of Chapter 56, including Section 5608.

not adopted this provision, nor has it otherwise imposed such risk on principals, thus confirming that the statutory text was only intended to apply to actual agents and powers of attorney. *Accord In re Estate of Davis,* 260 Ill.App.3d 525, 198 Ill.Dec. 5, 632 N.E.2d 64, 65–66 (1994) (explaining that, where a power of attorney is forged, no principal-agent relationship exists, and hence, a third party's good-faith reliance on an apparently valid power could not shield it from liability under the relevant statute immunizing third parties who act "in good faith reliance on a copy of the agency"); [12] *see also In re Baxter,* 320 B.R. 30, 39 (Bankr.D.D.C.2004) (holding that, where a power of attorney is forged, a deed of trust executed pursuant to it is ineffective; "[t]he person whose signature is forged is an innocent party, and ought not have the deed of trust given effect"). *But see Villanueva v. Brown,* 103 F.3d 1128, 1137 (3d Cir.1997) (affirming the trial court's award of summary judgment to a third party who was unaware that the power of attorney in question was a forgery). *See generally* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

■ Notably, as well, at common law, the risk of loss due to a putative agent's false dealing was only placed on the principal if the latter had acted negligently or was otherwise at fault in creating the circumstances that allowed the fraud to occur. *Compare Appeal of Pa. R.R. Co.,* 86 Pa. (5 Norris) 80 (1878) (denying relief to the executrix of an estate who had entrusted certificates of stock with blank powers of attorney signed by the decedent to an individual who later used them in a fraudulent manner as collateral for a loan), *with Robb v. Pa. Co. for Ins. on Lives & Granting Annuities,* 186 Pa. 456, 40 A. 969 (1898) (granting relief against a bank to a depositor who kept a rubber stamp of his signature in a locked safe, where the safe was broken into and the stamp used to forge his signature on checks drawn on his account; the Court distin-

12. *Estate of Davis* was decided before the Illinois statute was amended to protect third parties who rely in good faith on a document "purporting" to establish an agency.

guished *Pa. R.R. Co.* on the basis that depositor had not acted negligently), *and Fifth St. Bldg. & Loan Ass'n of Phila. v. Kornfeld,* 315 Pa. 406, 172 A. 703 (1934) (denying relief to a third-party plaintiff where no act or omission on the part of the defendant corporation—the purported principal—was the proximate cause of the plaintiff's loss). Inasmuch as Section 5608 does not expressly abandon this common-law framework, it is assumed to have carried it forward. *See United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993) (recognizing that the retention of common-law principles is presumed unless "a statutory purpose to the contrary is evident[; i]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law").

Additionally, although Section 5608 is not part of the UD-PAA, the latter act contains an analogous provision protecting persons who rely upon powers of attorney without knowledge that the principal has become incapacitated in the post-execution timeframe. *See* 20 Pa.C.S. § 5605(b) & cmt. Notably for present purposes, the General Assembly has adopted a comment drafted by the National Conference of Commissioners on Uniform State Laws, which clarifies the UDPAA's scope as follows:

> In this and the following sections, it is assumed that the principal is competent when the power of attorney is signed. If this is not the case, nothing in this Act is intended to alter the result that would be reached under general principles of law.

20 Pa.C.S. § 5604 cmt. 1; *see* 20 Pa.C.S., Ch. 56 (Jt. St. Gov't Comm'n Cmt.—982). Although the comment is not directly relevant here, we believe similar treatment is implicated by the terms of Section 5608, particularly as powers of attorney are presumed durable unless specifically provided otherwise in the document itself. *See* 20 Pa.C.S. § 5601.1.[13]

---

**13.** We do not agree with the Board that this interpretation renders Section 5608 meaningless, as there are circumstances where the statute would continue to apply notwithstanding a valid POA. For example, it would appear to immunize SERS from liability where the SERS mem-

The dissenting Justices disagree with the above analysis. Madame Justice Todd, for her part, reasons that the Legislature's allowance for a refusal of instructions of an attorney-in-fact upon reasonable cause should be read to modify the statutory references to "agent" and "power of attorney." Dissenting Opinion, at 680–81, 9 A.3d at 1169–70 (Todd, J.). We fail to see, however, how the provision for this specific exception to the general rule modifies the overall character of the general rule itself. Indeed, Justice Todd's understanding that our approach "would have more force" if the Legislature had simply omitted the specific reference to the power of attorney underlying the agency relationship appears to acknowledge the core significance of the Legislature's statement of the general rule in the first instance. *See id.* at 682, 9 A.3d at 1170 ("If the subsection read, 'Any person who acts in good faith reliance on the instructions of an agent shall incur no liability as a result thereof,' the majority's construction would have more force. But it does not.").[14]

ber claims that her attorney-in-fact failed to select the retirement option best suited to her needs. More generally, it protects third parties in many circumstances where the principal contends that the agent acted in a manner designed to serve his own interests rather than those of the principal. Indeed, agents engage in self-dealing behavior with some frequency, and this is often hidden from the third party. *See, e.g., Empire Trust Co. v. Cahan,* 274 U.S. 473, 479, 47 S.Ct. 661, 662, 71 L.Ed. 1158 (1927). At a minimum, it is not always clear whether the third party in any given situation should be aware that self-dealing might be occurring. *See generally Am. Realty Co. v. Amey,* 121 Me. 545, 118 A. 475, 478 (1922) ("As to what would be a sufficiency of facts to excite inquiry no rule can very well establish; each case depends upon its own facts. There is a great inconsistency in the cases upon this point."). Accordingly, predicating third-party immunity solely on good-faith reliance on a power of attorney is a reasonable legislative objective, as it avoids such difficulties even in cases where actual authority exists. For this reason, we differ with Mr. Justice Eakin's suggestion that Section 5608's protections are "irrelevant" to any state of affairs involving actual authority and, concomitantly, that there is "no need" for express third-party immunity under such circumstances. Dissenting Opinion, at 679, 9 A.3d at 1169 (Eakin, J.). Indeed, Justice Eakin's position seems incompatible with the express clarification provided by the General Assembly in 1999 that, for purposes of (*inter alia*) Section 5608, "the term 'agent' means a person designated by a principal in a power of attorney to act on behalf of that principal." 20 Pa.C.S. § 5601(f); *see supra* note 11.

14. As reflected in her comments quoted above, Justice Todd would consider accepting that the Legislature meant "agent" when it said

Both dissents also proffer a policy-based rationale to support extending Section 5608(b) immunity to situations involving fraud. The essence of their position seems to be that, absent such immunity, third parties could be placed in a difficult situation when they are uncertain whether the document purporting to be a power of attorney is valid, particularly if they fail to complete a timely investigation into the document's validity. Accordingly, they suggest our interpretation places an unwarranted investigatory burden upon third parties. *See* Dissenting Opinion, at 683–84, 9 A.3d at 1172–73, Todd, J.); Dissenting Opinion, at 679, 9 A.3d at 1169 (Eakin, J.).[15]

The dissents' concern, while not unfounded, ultimately reflects the reality that permitting the use of powers of attorney is something of a mixed benefit: they can facilitate useful transactions by freeing the principal to be elsewhere when the transaction occurs, but they can also create opportunities for self-dealing by unscrupulous persons. *See generally* Linda S. Whitton & Richard E. Davis II, *Coming to Ohio?*, 18 OHIO PROB. L.J. 135 (2008) (referring to these competing interests as the "autonomy-versus-protection tension"). Thus, while promoting the efficiencies occasioned by the good-faith use of valid powers of attorney may be a desirable objective, we are also mindful of countervailing policy concerns to which the dissents do not refer. Specifically, and as articulated by Appellant, the broader construction of Section 5608(b) advocated by SERS and the dissents would deprive incapacitated

"agent," albeit she does not accept that it meant "power of attorney" when it said "power of attorney." In our view, however, the statutory reference to the power of attorney does not alter the provision's meaning, as the fact of an agency relationship assumes the underlying power in any event. It is our position, then, that the General Assembly meant both "agent" when it said "agent" and "power of attorney" when it said "power of attorney."

15. Justice Todd objects to our characterization of her position in this regard as a policy-based one, explaining that her concern is with the avoidance of absurd results. *See* Dissenting Opinion, at 686 n. 9, 9 A.3d at 1173 n. 9. We have used the term "policy" on account of our perspective that consideration of the reasonableness or unreasonableness of the results of a statute in its practical application reflects a policy analysis. As Justice Todd holds a different view, our references to "policy" should be read as shorthand for a concern with the avoidance of unreasonable results in practical application.

persons of the ability to require third parties to reverse actions affecting their legal rights that were falsely undertaken in their name.

It is not our role to determine which of these interests is weightier; rather, we assume that the Legislature, as a policy-making body, *see Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.,* 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007), was aware of these matters and, in drafting Section 5608, intentionally chose language that facially only applies to actual (i.e., valid) powers of attorney.[16] Justice Todd states that it is more natural to read Section 5608(b) as if the word "apparent" were inserted before "power of attorney." *See* Dissenting Opinion, at 681, 9 A.3d at 1170 (Todd, J.); *see also* Dissenting Opinion, at 678–80, 9 A.3d at 1168–69 (Eakin, J.) (same). We, on the other hand, believe that it is most natural to read the text as the Legislature actually wrote it, and that doing so is particularly advisable where judicially inserting new words would substantively alter its meaning and application. *See Commonwealth v. Shafer,* 414 Pa. 613, 621, 202 A.2d 308, 312 (1964) (clarifying that it is improper for this Court to supply omissions in the legislative text, even if the perceived omission may have resulted from inadvertence or lack of foresight by the Legislature).

We recognize that, depending on the specific statutory language at issue, resort to the plain text can potentially be carried to a point of unreasonableness, as the dissenting opinions suggest of our acceptance of the act's plain terms here. Justice Todd emphasizes that the General Assembly does not intend an absurd or unreasonable result, and de-

16. Indeed, we agree with Madame Justice Todd's assessment that subsections (a) and (b) should be "read in tandem, and as coextensive," Dissenting Opinion, at 681, 9 A.3d at 1170 (Todd, J.), and observe that it is unlikely that the Legislature intended subsection (a) to impose liability where third parties fail to comply with invalid powers of attorney. *See* 20 Pa.C.S. § 5608, Jt. St. Govt. Comm. Comment—1992 (2005 Main Vol.) ("This section is new. It is designed to encourage third parties to *follow the instructions of an attorney-in-fact* and to be relieved of liability for doing so." (emphasis added)). That being the case, subsection (b) should also be understood as applying only to valid powers of attorney.

scribes our construction as "impracticable." Dissenting Opinion, at 684, 9 A.3d at 1172 (Todd, J.). We respectfully suggest, however, that she arrives at this characterization by considering only one category of the competing policy considerations. Likewise, we demur to any implication that interpreting the enactment to, in effect, leave undisturbed the common-law rule pertaining to invalid powers would be absurd or unreasonable, as that rule recognized the legitimate interests of a principal victimized by fraudulent conduct and imposed rational limits on recovery based on the level of fault attributable to the principal. Accordingly, we believe that the arguments articulated by the dissent are best made to the legislative body, which possesses the resources to study the likely effects of broader third-party immunization, see Am. Future Sys.,°Inc. v. Better Bus. Bureau of E. Pa., 592 Pa. 66, 81 n. 10, 923 A.2d 389, 398 n. 10 (2007) (observing that the General Assembly is better suited than the judiciary to balance social policy considerations); Naylor v. Twp. of Hellam, 565 Pa. 397, 408, 773 A.2d 770, 777 (2001), as well as the authority to adopt immunization language similar to that appearing in the statutes of other states mentioned above—or to the design embodied in Section 119 of the Uniform Power of Attorney Act—if it judges the same to be in the best interests of Pennsylvania citizens.[17]

Justice Todd also refers to the required notice under Section 5601(c) to buttress her interpretation of Section 5608. As she readily agrees, however, Section 5601(c) did not exist at the time of the underlying events. Even if it did, as an interpretive matter we differ with her conclusions grounded on that provision. Most notably, to the degree subsection (c) establishes a burden-allocation scheme based on the presence or absence of the notice, such a scheme does not confirm a broad construction of Section 5608 in the manner suggested by the dissent. In its official comment regarding this subsection, the Legislature specified that a primary purpose of the notice requirement is to protect the principal; it was not evidently

17. For example, the Illinois legislature modified its statute to supply greater protection to third parties after Estate of Davis was decided. It is possible that our own General Assembly will eventually do likewise. The point here is that it is not our function to make such a revision.

aimed at protecting third parties. *See* 20 Pa.C.S. § 5601, Jt. St. Govt. Comm. Comment—1999. The comment also implies that the burden-shifting scheme is meant to incentivize the principal to include the notice and agents to request the notice; there is no indication that it was intended to restrict the remedies available to incapacitated persons when litigation ensues pertaining to false agents who are resourceful enough to include such a notice in a falsified power of attorney. Indeed, it would be just as easy for an unscrupulous "agent" to forge an alleged principal's signature underneath a Section 5601(c) notice as it would to forge the same signature on the main document itself. Finally, and again, the comment refers expressly to an "agent's impropriety in exercising a power," which only makes sense in the context of an actual agent exercising an actual power. Therefore, unlike the dissent, we do not view the 1999 addition of subsection 5601(c) as somehow supporting a conclusion that Section 5608(b) was originally intended to apply to situations involving an invalid power of attorney.

Finally, Justice Todd indicates that giving effect to the statute's plain text as it currently stands would mean that the Legislature has left intact existing rules regarding invalid powers, while superseding common law principles governing valid powers. *See* Dissenting Opinion, at 687, 9 A.3d at 1173–74 (Todd, J.).[18] There is nothing particularly unusual about this, as legislation may supplant part, but not all, of the common law governing a single, overall topic. *See, e.g., Erie Golf Course*, 605 Pa. at 504 & n. 16, 992 A.2d at 86 & n. 16. Insofar as the observation is intended to reinforce the dissent's point that innocent third parties may be put in a difficult position, we repeat that, as presently drafted, Section 5608 only pertains to actual agents and powers of attorney, and moreover, that the dissent does not accord any weight to

18. In her comments, Justice Todd characterizes such effect as this Court's "importing the common law framework" into the statutory scheme. *See* Dissenting Opinion, at 687, 9 A.3d at 1174. From our perspective, however, we merely enforce the enactment according to express contours, leaving intact common law principles not addressed by the General Assembly (obviously pending such further common-law or statutory developments as may arise in appropriate circumstances).

substantial countervailing burdens that its construction would place upon persons whose interests are adversely affected during their incapacity through the fraudulent actions of false agents.[19] Again, weighing these competing concerns is a matter of social policy appropriately left to the legislative body.

In light of the above, we conclude that Section 5608 does not apply in the present case and, hence, the Board and the Commonwealth Court should not have denied relief on the grounds that Appellant failed to demonstrate that SERS employees acted in bad faith or had reasonable cause to question the POA's validity or Robert Vine's apparent authority.

## II.

██ As the Board's decision to deny Appellant's request on that basis was grounded on an error of law, pursuant to Section 704 of the Administrative Code, we need not affirm it. *See* 2 Pa.C.S. § 704; *D'Alessandro v. PSP*, 594 Pa. 500, 509, 937 A.2d 404, 409 (2007). Instead, Section 704 directs that we may enter any order authorized by Section 706 of the Judicial Code. *See* 42 Pa.C.S. § 706 (relating to the disposition of appeals, and providing that "[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances"). To determine which of these actions is appropriate, however, we inquire whether Appellant can prevail under general principles of law upon a ·showing of incapacity, because if she cannot, then the Board's error was harmless. *See generally Pa. Game Comm'n v. Bowman*, 81 Pa.Cmwlth. 381, 390, 474 A.2d 383, 388 (1984) ("An order of an administrative agency will not

19. While certainly Justice Todd is correct in stressing that we may not consider the fact that the relevant power of attorney was signed with an "x" as reflecting reasonable cause to question the validity of the agency *in this case* on account of waiver, *see* Dissenting Opinion, at 687 n. 10, 9 A.3d at 1174 n. 10, our decision here obviously reaches beyond the contours of the present case. We therefore deem it wholly appropriate—in assessing policy—to consider the interests of affected incapacitated persons beyond the specific circumstances at issue here.

be disturbed on appeal for harmless error."); *Campbell v. DER*, 39 Pa.Cmwlth. 624, 626, 396 A.2d 870, 870 (1979) ("It is axiomatic that we will not disturb a judgment, order, or decree on appeal for harmless error." (citing *Paley v. Trautman*, 317 Pa. 589, 177 A. 819 (1935))). For the same reason, we must also assess the Board's claim that it lacked "authority or jurisdiction to reach the issue of" of Appellant's alleged incapacity.

Under general principles of law, an individual determined to be incapacitated is incapable of making any instrument in writing. *See* 20 Pa.C.S. § 5524. This Court has recognized that transactions undertaken by such persons are invalid and may be nullified. In *Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679 (1991), for example, the Court indicated that a funds transfer would have to be reversed if the individual who signed documents authorizing the transfer was incompetent to do so at the time of execution, and remanded the matter to the trial court to make a finding on the question. *See id.* at 167–68, 589 A.2d at 684. The Superior Court has also recognized that a similar result may obtain where a document purports to be a power of attorney, but at the time of execution the named principal was mentally incapacitated. *See Wilhelm*, 441 Pa.Super. at 240, 657 A.2d at 39; *cf. Dexter*, 82 U.S. at 20 (holding that a POA taken from a person of unsound mind is invalid); 2A C.J.S. *Agency* § 25 ("A person who does not have the mental capacity to contract and conduct his or her business himself or herself is not capable of appointing an agent for that purpose.").

Although the Commonwealth Court in the present case relied upon *Der Hagopian* rather than *Wilhelm,* any disharmony it may have perceived between those two decisions pertained only to the question of whether actions taken pursuant to invalid POAs are void, or merely voidable. *See Vine*, 956 A.2d at 1096. As explained, it found that distinction significant based upon its interpretation of Section 5608 of the Code, which we have now determined to be erroneous. The salient aspect of *Der Hagopian,* for our present review, is that it reflects that any business contract entered into when one of

the parties is incompetent can be avoided upon a proper showing of incompetence. *See supra* note 10. This does not conflict with the expression in *Wilhelm* that a power of attorney is invalid if the principal lacked capacity at execution; further, both cases are in alignment with *Moser* on the question: in all three decisions, the court recognized that, upon a showing that the principal lacked capacity at the time he or she executed the document in question, any transactions undertaken pursuant to that document could potentially be nullified. Thus, we agree with Appellant that, whether a POA is considered void or voidable is immaterial for purposes of the statutory question implicated by the present argument. *Accord Prod. Credit Ass'n of Madison v. Kehl*, 148 Wis.2d 225, 434 N.W.2d 816, 818 (App.1988) (where it was undisputed that the decedent was incompetent at the time a POA was executed on his behalf, it was immaterial whether the POA was described as void or voidable; either it was void at its inception, or, if merely voidable, it was voided by evidence of the decedent's incompetency at its execution).[20]

Given our determination that Appellant could ordinarily prevail upon a showing of incapacity under general principles of law, we now address the Board's contention that, regardless of the underlying facts, it lacked "authority or jurisdiction to reach the issue of whether or not" the POA was valid due to Appellant's alleged lack of capacity. Notably, the Board did not cite any authority limiting its jurisdiction in this regard, and our research does not reveal any. Indeed, the Board used the terms "jurisdiction" and "authority" in a way that makes it difficult to discern whether it undertook separately to assess both its jurisdiction and its authority to evaluate the validity of

**20.** The difference between void and voidable powers of attorney is not sharply in focus here, because it is Appellant's position that the distinction is legally insignificant for purposes of the entire case, since she was incapacitated. *See* Brief for Appellant at 26 & n. 17. Accordingly, further development of the distinction is best left for another case, and nothing in this opinion should be understood as discounting the potential significance of deeming a POA voidable (as opposed to void) as it pertains to other defenses, such as those based on the timeliness of a claim or ratification.

the POA. This Court has explained, however, that those two terms have distinct meanings:

> Jurisdiction and power are not interchangeable although judges and lawyers often confuse them. Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Riedel v. Human Relations Comm'n of Reading*, 559 Pa. 34, 39–40, 739 A.2d 121, 124 (1999) (quoting *Del. River Port Auth. v. PUC*, 408 Pa. 169, 178, 182 A.2d 682, 686 (1962)) (internal citation omitted); *see also Beltrami Enters., Inc. v. DER*, 159 Pa.Cmwlth. 72, 81, 632 A.2d 989, 993 (1993) (the fact that an administrative agency may not have the power to afford relief in a particular case is of no moment to the question of its jurisdiction over the general subject matter of the controversy).

▬ Here, the general class to which the underlying controversy belongs is whether a request to alter a retirement option after an otherwise binding election has been made should be granted. As SERS is the agency responsible for administering the State Employees Retirement Code,[21] *see generally* 71 Pa.C.S. § 5902(f); *Pa. State Univ. v. SERS*, 880 A.2d 757, 760 (Pa.Cmwlth.2005), the Board, as the agency's governing body, is competent to determine whether such requests should be granted. This Court recognized as much in *Estate of McGovern v. SERS*, 512 Pa. 377, 517 A.2d 523 (1986), *overruled in part by Leon E. Wintermyer, Inc. v. WCAB (Marlowe)*, 571 Pa. 189, 203 n. 12, 812 A.2d 478, 487 n. 12 (2002), in which the Court affirmed the Board's determination that the SERS member had the requisite mental capacity prior to his death to execute a valid and binding retirement application, thus leading the Court to agree that the Board had properly denied the request of the retiree's estate to alter his retirement option posthumously. *See McGovern*, 512 Pa.

21. Act of Mar. 1, 1974, P.L. 125, No. 31 (as amended 71 Pa.C.S. §§ 5101–5956).

at 386, 517 A.2d at 527; *see also Stevenson v. SERS*, 711 A.2d 533 (Pa.Cmwlth.1998) (affirming the Board's determination that a gravely ill SERS member was nonetheless competent when he elected his retirement options, so that his widow could not change those options); *cf. Marron v. SERS*, 118 Pa.Cmwlth. 174, 544 A.2d 1095 (1988) (affirming the Board's adjudication denying the request of a SERS member's widow to alter retirement options on the basis that the decedent was inadequately counseled before he made his selection). Accordingly, because the Board is competent to adjudicate controversies of the class to which the present one belongs, it did not labor under any defect of jurisdiction.

■ Nor do we find that the Board lacked the power to grant Appellant's request. As noted, authority, or power, pertains to the ability of a decision-making body to order or effectuate a certain result. Presently, the Board had such authority if it was permitted to make findings concerning Appellant's mental state, and to order that her benefits be corrected in the event they were invalidly chosen. Inasmuch as the Board is a creature of the Legislature, *see* 71 Pa.C.S. § 5901, it has those powers that are conferred by statute, *see Small v. Horn*, 554 Pa. 600, 609, 722 A.2d 664, 669 (1998), as well as by any valid regulations duly promulgated for the uniform administration of SERS. *See* 71 Pa.C.S. § 5902(h). Under the Board's regulations, the general rules of administrative practice and procedure apply to proceedings before it. *See* 4 Pa.Code § 250.1. Those rules, in turn, require the "elucidation of the *relevant facts* and applicable law" with regard to the subject matter in dispute in any matter or proceeding before the agency. 1 Pa.Code § 31.3 (emphasis added).

Appellant's mental capacity (or lack thereof) on January 30, 1998, to designate Robert as her agent to engage in retirement transactions on her behalf, comprised a fact that was relevant to the question of whether her retirement benefits were validly chosen. This is because—as Judge McCloskey pointed out in his responsive opinion—under the Board's regulations, if a SERS member is mentally incompetent to

choose retirement benefits, only a court-appointed guardian may do so on her behalf, whereas an agent may make such selections pursuant to a power of attorney where the SERS member is mentally competent but physically unable to file the application. *See* 4 Pa.Code § 249.7(e). *See generally Moser,* 527 Pa. at 167, 589 A.2d at 684 (confirming that mental competency is a "crucial factual issue" when assessing whether or not a financial transaction is valid).

Additionally, and as noted, the Board acknowledged in the Adjudication that, as a general proposition, it had the power to retroactively alter retirement benefits in some cases based on incapacity, as attested by its decisions in *McGovern* and *Stevenson. See generally* 71 Pa.C.S. § 5954 (pertaining to fraud and the adjustment of errors by the Board); *Bittenbender v. SERS,* 154 Pa.Cmwlth. 11, 15–16 & n. 2, 622 A.2d 403, 405 & n. 2 (1992) (interpreting Section 5954 as permitting SERS to correct erroneous over- and under-payments to retired members). We believe the Board was correct in this respect, as there is no evident reason why it could not voluntarily have granted Appellant's request to change to disability retirement.[22]

In sum, we conclude that the Board had the authority to assess Appellant's mental capacity to execute a valid POA, and to make any necessary corrections to her retirement benefits.

According to the proposed finding of the hearing examiner, Appellant was incapacitated at the execution of the POA and, thus, the POA relied upon by SERS was invalid. Although SERS failed to interpose any exception to that finding—thereby waiving any challenge to it before the Board, *see* 1 Pa.Code § 35.213—the Board did not adopt the proposed report, and, as such, it has not yet made its own findings. *See generally Marinucci v. SERS,* 863 A.2d 43, 46 & n. 3 (Pa. Cmwlth.2004) (explaining that a proposed report is not binding on the Board, which, as the agency head, remains the ultimate

---

**22.** In predicating its contrary argument on its supposed immunity from liability under Section 5608, the Board appears to confuse the distinct concepts of the power to grant a request for modification of benefits, and immunity from liability for refusing such a request.

factfinder). Accordingly, the cause must be remanded for further proceedings by the Board.

For the reasons stated, we reverse the order of the Commonwealth Court and remand this matter to the SERS Board for further proceedings consistent with this opinion.

Chief Justice CASTILLE, Justices BAER and ORIE MELVIN join the opinion.

Justice McCAFFERY files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice TODD files a dissenting opinion.

Justice McCAFFERY, concurring.

I agree with the majority's determination that Section 5608 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. 5608, does not apply in the present case. However, my reasons are narrower than those adopted in the majority opinion, and I believe they avoid altogether the understandable dispute that has arisen between the majority and the dissenting views regarding the General Assembly's broad intent behind Section 5608(b). Indeed, there is no need for this Court to rule now upon the serious issues that divide the majority and dissent regarding their differing interpretations of Section 5608(b). Accordingly, I believe that we should not make any sweeping interpretation on the issue of Section 5608's third-party immunity provisions, lest that interpretation lead to unintended and unfortunate consequences by its future application.

Both the majority and dissent correctly conclude that subsections (a) and (b) of Section 5608 must be read in conjunction with each other. Subsection (a) defines third-party liability, and provides in relevant part:

(a) **Third party liability.**—Any person who is given instructions by an agent in accordance with the terms of a power of attorney shall comply with the instructions. Any person who without reasonable cause fails to comply with

those instructions shall be subject to **civil liability for any damages** resulting from noncompliance.

20 Pa.C.S. § 5608(a) (emphasis added).

Subsection (b) addresses, in my view, the immunity conferred for the liability **defined by subsection (a).** Subsection (b) provides:

> **(b) Third party immunity.**—Any person who acts in good faith reliance on a power of attorney shall incur **no liability** as a result of acting in accordance with the instructions of the agent.

20 Pa.C.S. § 5608(b) (emphasis added).

As I read this legislation, "liability" for purposes of both subsections (a) and (b) involves only civil liability for damages. The present appeal does not stem from an underlying civil action for damages. Rather, this case involves a simple administrative appeal whereby Appellant sought a change of retirement payout option from the agency in charge of administering the retirement funds toward which she had contributed significant funds. Accordingly, because that agency (SERS) is not the defendant in a civil action seeking damages, it has no basis upon which to assert the immunity provisions of Section 5608(b); hence, Section 5608 does not apply to the instant appeal. On these grounds alone, I concur with the majority opinion that the Commonwealth Court and the SERS Board erred by barring Appellant's administrative action based on Section 5608.

Because Section 5608 does not apply to the instant case, issues remain regarding whether (1) the power of attorney at issue here, executed while Appellant was mentally incapacitated according to the factual findings of the hearing examiner, was valid under general principles of law; (2) the SERS Board has jurisdiction to adjudicate the dispute; and (3) the SERS Board has the power to grant Appellant's request for a change of retirement option. I believe that the majority opinion has fully and appropriately addressed these issues, and I join the majority's analysis and disposition of them. Therefore, I concur with the majority's decision to reverse the order of the

Commonwealth Court and remand this matter to the SERS Board for further proceedings.

Justice EAKIN, dissenting.

This case highlights the dilemma created by the presentation to a fiduciary of a facially valid power of attorney, later found to be invalid for reasons not discoverable by reasonable diligence of the fiduciary. In the end, we have two innocent parties, SERS and appellant, and one bad party, but must determine as between the innocents, which must bear the loss. While there is facial salience in finding the acronymed fiducia- ry[1] better able to bear the loss, I conclude the relevant statute does not lead to this result.

This situation is hardly uncommon, and our legislature has attempted to address the matter through 20 Pa.C.S. § 5608. My colleagues find that § 5608(b) does not protect an innocent third party who in good faith relies on a facially valid power of attorney; I respectfully disagree and conclude the statute is designed to do exactly that.

There are two subsections of the statute. The first requires a third party to obey the power of attorney's instructions, absent a good reason not to do so. The second says that if the third party acts in good faith reliance on the document, it is immune. Such legislation allows, nay demands, compliance with the facially valid power of attorney, and in return assures a party immunity if it follows the agent's instructions in good faith.

20 Pa.C.S. § 5608(a) provides that "[a]ny person who with- out reasonable cause fails to comply with [the attorney-in- fact's] instructions shall be subject to civil liability. . . ." *Id.* As the majority notes, the record shows the SERS counselor had no reasonable cause to do anything but that which the attorney-in-fact instructed. As the legislature created specific

1. In reality, the fiduciary is not a monolithic bureaucracy, but the repository of the money of countless employees whose retirement is dependent on the proper management of it. To deplete the assets of these very real people when the fiduciary acts properly and in good faith is not as salient an outcome as it may at first appear.

statutory liability for not acting in compliance with those instructions, SERS had to act in accordance with them, on pain of statutory liability. And as the record shows, SERS did so in good faith. 20 Pa.C.S. § 5608(b) provides that one acting in good faith reliance on a power of attorney "shall incur no liability" in following the agent's instructions. *Id.* Ergo, SERS should not be liable.

The majority suggests the legislature could have added words requiring "indicia of validity" to obtain the protections of the statute, which is true—such words would indicate application where there is only apparent authority. However, this argument is equally if not more applicable in reverse—the legislature could have shown the intent the majority attributes to it by adding the single unambiguous word, "valid." This would accomplish the majority's result—to deny immunity to those acting on apparent authority and in good faith. The legislature did not do so.

As the legislature did not add a defining adjective, what then was its intent? I suggest it is clearly established by the requirement of good faith. If actual authority were required, the good faith element necessary for immunity would be irrelevant—there can never be liability for acting on the instructions of an agent with actual authority. There simply is no need for any statute to require good faith as a precursor for immunity, if immunity attaches because actual authority exists.

A good faith requirement for immunizing the third party only makes sense if it contemplates a situation where there was no actual authority. If the attorney-in-fact has actual authority to issue the instructions, there is no need for immunity. It is only where the instructions were issued by one without actual authority that immunity is a consideration. The legislature did not write a statute to apply protection to a situation where it is irrelevant—it created protection for the instant situation, a good faith compliance with apparent authority.

Here, there is no dispute SERS followed the instructions of the power of attorney in good faith. There was no facial indication the power of attorney was fraudulent, as the SERS counselor knew appellant had been in an accident and her husband was acting on her behalf. Thus, under the clear language of § 5608(b), SERS is immune from liability; the contrary holding condemns the statute to irrelevance and places SERS and all third parties and fiduciaries in an untenable position.

Accordingly, I respectfully dissent.

Justice TODD, dissenting.

I respectfully dissent because I cannot agree, as the majority holds, that SERS may not rest on Section 5608(b)'s "good faith reliance" immunity under the circumstances of this case. 20 Pa.C.S.A. § 5608(b). Rather, I conclude that this immunity provision applies in just this type of situation: where, in the absence of reasonable cause to question a power of attorney, and in good faith reliance on its legitimacy,[1] a third party acts pursuant to a putative agent's instruction. In such circumstances, I find that a third party, like SERS herein, is immune from liability for those acts under Section 5608(b). In my view, the majority's narrow construction—that Section 5608(b) applies only where the power of attorney is factually valid— does not account for the operation of Section 5608 as a whole or within Chapter 56 ("Powers of Attorney") of Title 20, and leads to unreasonable practical effects.

First, the majority rejects the contention that its interpretation of Section 5608(b) renders the immunity provision meaningless by asserting that the provision, for example, would still "appear" to apply to shield a third party in relying on an agent's negligent or ill-informed decision making, *see* Majority Op. at 664–65 n. 13, 9 A.3d at 1160 n. 13 ("[T]here are circumstances where the statute would continue to apply

1. I agree, as the majority found, that Appellant has waived any challenge to the Board's findings that SERS acted in good faith and lacked reasonable cause not to follow her then-husband's instructions. *See* Majority Opinion at 658–61, 9 A.3d at 1157–58.

notwithstanding a valid [power of attorney]. For example, it would appear to immunize SERS from liability where the SERS member claims that her attorney-in-fact failed to select the retirement option best suited to her needs."), or from an agent's self-dealing, *id.* ("More generally, [Section 5608] protects third parties in many circumstances where the principal contends that the agent acted in a manner designed to serve his own interests rather than those of the principal."). However, in my view, this construction does not comport with Section 5608(a).

Subsection (a) compels a third party's compliance with an agent's instructions. 20 Pa.C.S.A. § 5608(a) ("Any person who is given instructions by an agent in accordance with the terms of a power of attorney shall comply with the instructions."). Indeed, a third party is made liable for resulting damages where the party, absent reasonable cause, fails to comply with such instructions. *Id.* ("Any person who without reasonable cause fails to comply with those instructions shall be subject to civil liability for any damages resulting from noncompliance."). I conclude subsection (a) and (b) are most naturally read in tandem, and as coextensive: subsection (a) imposes liability for noncompliance absent reasonable cause, and subsection (b) relieves a party of liability where there is good faith reliance. Although "good faith reliance" is not defined, "reasonable cause" is defined to "include, but not be limited to, a good faith report having been made by the third party to the local protective services agency regarding abuse, neglect, exploitation or abandonment pursuant to section 302 of the ... Older Adults Protective Services Act." [2] *Id.* Although the definition is not exhaustive, this "reasonable cause" exception evinces a legislative concern with a power of attor-

---

**2.** Section 302 of the Older Adults Protective Services Act provides, in pertinent part:

> Any person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services.

35 P.S. § 10225.302(a). The declared policy behind this act is "that older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare." 35 P.S. § 10225.102.

ney being used illicitly or coercively, not just that the agent might act in an ill-informed or incompetent manner. Accordingly, a more natural reading of subsection (b) provides corresponding immunity absent such indications, so that it protects a third party's reliance on an **apparently** valid power of attorney.

This conclusion is buttressed by the text of Section 5608(b). That subsection refers both to an "agent" and to "powers of attorney," and by this usage distinguishes between the two. As framed, Section 5608(b) refers to reliance on the power of attorney, not reliance on the agent: "Any person who acts in good faith reliance **on a power of attorney** shall incur no liability as a result of acting **in accordance with the instructions of the agent.**" *Id.* § 5608(b) (emphasis added). If the subsection read, "Any person who acts in good faith reliance on the instructions of an agent shall incur no liability as a result thereof," the majority's construction would have more force. But it does not.

Further complicating the majority's approach is that it does not fully account for the operation of Section 5601. This section sets forth the general requirements of a power of attorney, including, in subsection (c), requiring the principal to sign a statutory notice which warns the principal of the broad powers conveyed:

> Notice.—All powers of attorney shall include the following notice [3] in capital letters at the beginning of the power of attorney. The notice shall be signed by the principal.

**3.** The notice must read:

NOTICE

The purpose of this power of attorney is to give the person you designate (your "agent") broad powers to handle your property, which may include powers to sell or otherwise dispose of any real or personal property without advance notice to you or approval by you.

This power of attorney does not impose a duty on your agent to exercise granted powers, but when powers are exercised, your agent must use due care to act for your benefit and in accordance with this power of attorney.

Your agent may exercise the powers given here throughout your lifetime, even after you become incapacitated, unless you expressly limit the duration

20 Pa.C.S.A. § 5601(c). The subsection further provides that "[i]n the absence of a signed notice, upon a challenge to the authority of an agent to exercise a power under the power of attorney, the agent shall have the burden of demonstrating that the exercise of this authority is proper." *Id.* Although the corollary is strongly implied, a comment to this section emphasizes that, where such a notice is provided, "the burden of demonstrating an agent's impropriety in exercising a power falls to the person challenging such act." *Id.* § 5601(c), 1998 Joint State Gov't Comm'n Cmt.

Accordingly, at least where a Section 5601(c) notice is executed with the power of attorney as statutorily required,[4] the power of attorney is presumptively valid, in that the burden is on the challenger to demonstrate the agent's impropriety. Although the notice requirement in Section 5601(c) was added in 1999, after Section 5608 was enacted, this burden shifting nonetheless dovetails with a conclusion that the legislature intended that a third party who is directed to act on a power of attorney may, in good faith, rely on its validity. While the majority rightly notes that Section 5601(c) was,

> of these powers or you revoke these powers or a court acting on your behalf terminates your agent's authority.
>
> Your agent must keep your funds separate from your agent's funds.
>
> A court can take away the powers of your agent if it finds your agent is not acting properly.
>
> The powers and duties of an agent under a power of attorney are explained more fully in 20 Pa.C.S. Ch. 56.
>
> If there is anything about this form that you do not understand, you should ask a lawyer of your own choosing to explain it to you.
>
> I have read or had explained to me this notice and I understand its contents.

| _____ | | _____ |
| (Principal) | | (Date) |

20 Pa.C.S.A. § 5601(c).

4. The power of attorney at issue in this case was purportedly executed in 1998, before the notice requirement was added as subsection (c) to Section 5601. *See* Act of Oct. 12, 1999, P.L. 422, No. 39, § 8.

according to its commentary, enacted to protect principals and sanction agents who operate under powers of attorney without such notices, *id.* § 5601(c), 1998 Joint State Gov't Comm'n Cmt., and that such notices could themselves be forged, Majority Opinion at 667–69, 9 A.3d at 1162–63, the statutory language remains: where the notice is provided, Section 5601(c) places the burden on third party challengers, which is consistent with my interpretation of Section 5608.

Further, I am not persuaded by the majority's reliance on commentary to the Uniform Durable Power of Attorney Act ("UDPAA"), in which the drafters of that uniform law indicated their guiding assumption that a principal is competent when the power of attorney is signed and that, "[i]f this is not the case, nothing in [the UDPAA] is intended to alter the result that would be reached under general principles of law." *See* Majority Opinion at 664, 9 A.3d at 1160 (quoting 20 Pa.C.S.A. § 5604, Uniform Law Comment, Section 1). The UDPAA was enacted in Pennsylvania in 1982 and codified at 20 Pa.C.S.A. §§ 5604, 5605, and 5606.[5] However, as the majority notes, Section 5608 is not part of the UDPAA, and Section 5608 was added a decade later. Thus, Section 5608 is the more recent legislative expression. More critically, Section 5608 introduced into the statutory framework for powers of attorney the legal compulsion to comply with an agent's instructions, an obligation that is absent from the UDPAA. The General Assembly may very well have concluded that, in order to impose this obligation and civil liability for noncompliance, legal immunity for acting on a facially compliant power of attorney was a necessary, and equitable, corollary.

Finally, in my view, the majority's interpretation is impracticable. *See* 1 Pa.C.S.A. § 1922 (setting forth as a rule of statutory construction that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Powers of attorney may empower an agent to engage in a broad range of activities on behalf of the principal, such as real property transactions, financial transac-

5. These are the only three sections in Chapter 56 of Title 20 which derive from the UDPAA.

tions, and authorizing medical care. *See* 20 Pa.C.S.A. § 5602(a).[6] Yet, in all of these endeavors, by narrowing the immunity provision to apply only where the power of attorney is in fact valid, the majority has imposed a substantial investigatory burden on the many and varied entities that receive instructions from a putative agent under a power of attorney: to avoid potential liability for following the agent's instructions, a third party must, even where there is no indication that the power of attorney was defectively executed, first assure themselves that the principal was competent at execution and/or have the principal ratify the instructions. (Obviously, requiring the principal to ratify the agent's instructions renders the power of attorney pointless.[7]) This is necessary even when the effort to do so is considered to be too oner-

6. Section 5602(a) provides:

(a) **Specification of powers.**—A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal, empower an agent to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney): (1) "To make limited gifts." (2) "To create a trust for my benefit." (3) "To make additions to an existing trust for my benefit." (4) "To claim an elective share of the estate of my deceased spouse." (5) "To disclaim any interest in property." (6) "To renounce fiduciary positions." (7) "To withdraw and receive the income or corpus of a trust." (8) "To authorize my admission to a medical, nursing, residential or similar facility and to enter into agreements for my care." (9) "To authorize medical and surgical procedures." (10) "To engage in real property transactions." (11) "To engage in tangible personal property transactions." (12) "To engage in stock, bond and other securities transactions." (13) "To engage in commodity and option transactions." (14) "To engage in banking and financial transactions." (15) "To borrow money." (16) "To enter safe deposit boxes." (17) "To engage in insurance transactions." (18) "To engage in retirement plan transactions." (19) "To handle interests in estates and trusts." (20) "To pursue claims and litigation." (21) "To receive government benefits." (22) "To pursue tax matters." (23) "To make an anatomical gift of all or part of my body."

20 Pa.C.S.A. § 5602(a).

7. *See Villanueva v. Brown,* 103 F.3d 1128, 1136 (3d Cir.1997) ("If parties were required to verify with the principal each instruction given to them by an attorney-in-fact, the authority given to attorneys-in-fact would be eviscerated.") (quoting *Heine v. Newman,* 856 F.Supp. 190, 195 (S.D.N.Y.1994)).

ous—for practical business or any other reasons—because, as discussed, the statute also compels a third party to comply with the power of attorney. *See id.* § 5608(a). Thus, to avoid liability down the road, the majority's interpretation effectively mandates such an investigation before a third party takes even the most routine actions pursuant to a power of attorney.[8] To make matters worse, the third party is potentially liable for damages resulting from any delay in executing the agent's instructions necessitated by such an investigation. *Cf. id.* (imposing civil liability for noncompliance). In short, the third party must investigate the pedigree of the power of attorney, must do so quickly, and may not opt out. I cannot conclude the legislature intended this unreasonable state of affairs. Indeed, I conclude that Section 5608(b) was intended specifically to avoid it.[9]

In this regard, the majority "demur[s] to any implication that interpreting the enactment to, in effect, leave undisturbed the common-law rule pertaining to invalid powers would be absurd or unreasonable." Majority Opinion at 668, 9 A.3d at 1162. The majority, however, does not leave the common law rule undisturbed. I can find no suggestion that, at common law, a third party was compelled to act on an agent's instructions, as Section 5608 requires. Rather, this Court has emphasized that, at common law, a third party acts on a power of attorney at its own risk. *See Fierst v. Commonwealth Land*

8. Moreover, performing this investigation is complicated by the burden shifting in Section 5601(c), because, as described above, it appears the agent, if the Section 5601(c) notice has been duly executed, has no obligation to demonstrate his authority.

9. I object to the majority's characterization of my analysis as a "policy-based rationale to support extending Section 5608(a) immunity to situations involving fraud." Majority Opinion at 666, 9 A.3d at 1161. As detailed within, my analysis is based on the language of the statute, and related statutes, which I interpret using accepted statutory construction tools to discern the legislature's intent, including the avoidance of absurd results. My interpretation is not, therefore, "policy-based". Further, I no more seek to "extend[ ]" Section 5608(a)'s immunity provision by my interpretation than the majority seeks to restrict its operation by theirs. We both, in the end, pursue an interpretation most in accord with the statutory language and legislative intent as expressed in that language, albeit there is disagreement, to be sure, concerning that interpretation.

*Title Ins. Co.*, 499 Pa. 68, 451 A.2d 674 (1982) (noting that third parties "are bound at their own peril" to notice limitations on an agent's authority, citing *Moore v. Luzerne County*, 262 Pa. 216, 105 A. 94 (1918)); *Campbell v. Foster Home Ass'n*, 163 Pa. 609, 632, 30 A. 222, 224 (1894) (same). Thus, the majority's interpretation imports the common law framework with respect to the investigatory burdens on third parties, but within a statutory scheme that now compels a third party to act pursuant to the power of attorney.[10] Again, I cannot conclude this is what the legislature intended.

For these reasons, as Appellant is bound by the Board's finding that SERS acted in good faith and lacked reasonable cause not to follow the instructions of her putative agent and then-husband Robert Vine,[11] I would find SERS was immune from liability under Section 5608(b), and on that basis would affirm the order of the Commonwealth Court.

---

**10.** It is not enough to argue that such compliance is only compelled under subsection (b) where the agency is actual, *see* Majority Opinion at 667 n. 16, 9 A.3d at 1161 n. 16 ("subsection (b) should also be understood as applying only to valid powers of attorney"), as the third party, under the scenario presently at issue, has no reasonable cause to question the validity of the power of attorney. Accordingly, lacking reasonable cause to be suspicious, the third party must nevertheless act as if **all** powers of attorney presented to it are valid.

**11.** *See supra* note 1.